511 P.2d 546

**STATE of New Mexico ex rel. STATE HIGH-
WAY DEPARTMENT of New Mexico,
Petitioner-Appellee,**

v.

**Joe YURCIC and Josephine Yurcic (Michael
G. Plese et al.), Respondents-Appellants.**

No. 9537.

Supreme Court of New Mexico.

June 22, 1973.

Bigbee, Byrd, Carpenter & Crout, Harl D. Byrd, Jay C. Carlisle, Santa Fe, for respondents-appellants.

David L. Norvell, Atty. Gen., E. E. Chavez, Chief Counsel, Leslie D. Ringer, Richard T. Whitley, Richard L. Russell, State Highway Department Asst. Attys. Gen., Santa Fe, for petitioner-appellee.

## OPINION

STEPHENSON, Justice.

The State of New Mexico, through the State Highway Department ("the Department") brought this eminent domain proceeding in the District Court of McKinley County against the owners of a number of tracts of land, including Mr. and Mrs. Joe Yurcic. The trial court dismissed the Yurcics' claim for damages, although they were granted judgment for certain attorney's fees. The Yurcics have appealed. The Department has not cross-appealed.

It appears that as early as 1964 the Department had evinced an intention, or at least a plan, to condemn the tracts of land with which we are concerned in connection with an interstate highway project. On the assumption that the condemnation would occur, the Yurcics entered into an option agreement with Western Securities in October 1965, in which they agreed to convey the land in question upon exercise of the option. They retained "all damages and other funds which may be payable from the State Highway Department" as part of the consideration. The option was exercised, and the transaction was consummated in June 1966. The land was ultimately conveyed to Phillips Petroleum Company subject to the same reservations as to any proceeds from the Department.

In August, 1968, the Department filed this action under the Special Alternative Procedure [§ 22–9–39 et seq. N.M.S.A. 1953 (1971 Pocket Supp.)] and on the same day the court issued a preliminary order of entry pursuant to Section 29–9–43.

However, the Yurcics filed timely objections to the preliminary order of entry and it was never made permanent.

In June, 1969, the Department moved to dismiss these proceedings as to the Yurcic property, reciting that a relocation would make them unnecessary. The Yurcics responded by asserting that the tract had been taken; that they had acted in reliance on the Department's action to their prejudice and further that the Department was estopped to dismiss. The court sustained the Department's motion for dismissal, but its order was subject to "a determination of any damages which may have accrued and are properly recoverable by (the Yurcics) because of the actions of the (Department)." The order further required the Yurcics to file a pleading within a reasonable time specifying any damages they had suffered because of the Department's action and provided for a responsive pleading.

In December, 1969, the Yurcics filed a claim for damages, which, as amended, sought damages said to have accrued by reason of the Department's abandonment of the condemnation suit. The Department answered with admissions and denials and also apparently moved the dismissal of the claim. The court in its judgment, inter alia, ruled that insofar as the Yurcics sought to recover the fair market value of the property or damages resulting from the loss of the benefit of their bargain, the claim should be dismissed for failure to state a claim upon which relief could be granted.

After the court had orally announced what its ruling would be, evidence was taken in respect to the Yurcics' claim for reasonable attorney's fees which were allowed.

■ The Yurcics first contend that the Department could not unilaterally abandon its condemnation proceeding without compensation to them. This is premised upon the proposition that a "taking" had oc-

curred. They say that under our law the "taking" occurs when the petition is filed.

Unfortunately for the Yurcics, after the judgment was entered in this case and, in fact, after the briefs were filed, we addressed ourselves to this question in State ex rel. State Hwy. Com'n. v. Hesselden Inv. Co., 84 N.M. 424, 504 P.2d 634 (1973). In that case we said:

"Clearly and logically the 'date of taking' was the date on which the condemnor became vested with the legal right to possession, dominion and control over the real estate being condemned. This date was March 5, 1968, the date the Order Making Preliminary Order of Entry Permanent was made and entered. State ex rel. State Highway Commission v. Burks, 79 N.M. 373, 443 P.2d 866 (1968)."

Hesselden involved distinguishable facts, but the distinction is without substance. That case concerned the issue of whether § 22–9–9.1, N.M.S.A.1953 (1971 Pocket Supp.), pertaining to partial takings was in effect at the date of the "taking." We see no reason why the time as of which a partial taking is fixed should be any different from the time when a complete taking occurs.

As we have said, the preliminary order of entry was never made permanent and there being no assertion that there was a physical entry or disturbance of the Yurcics' possession, we hold that no "taking" occurred here.

■ The Yurcics next contend that they were entitled to damages either under Article II, Section 20 of the New Mexico Constitution which provides that private property shall not be taken or damaged for public use without just compensation or under § 22–9–22, N.M.S.A.1953 (1971 Pocket Supp.), which provides for actions by those whose property has been taken or damaged without just compensation.

Here again, the argument is premised, in part at least, upon a taking having occurred, but we have held that none did. Insofar as it is asserted that damage to the land occurred, this is also without substance. The damage that may have occurred was to the Yurcics rather than to the land, and was only incidental.

On this subject Nichols on Eminent Domain, § 26.45 (3rd ed. 1972) states:

"When condemnation proceedings are discontinued, even when there has been no disturbance of the actual occupancy of the land, the owner often suffers pecuniary loss during the pendency of the proceedings. * * * He is almost certain to have incurred an attorney's fee. But it is held that in the absence of bad faith or unreasonable delay upon the part of the party which instituted the proceedings that the owner is not constitutionally entitled to recover such expenses and losses. When the statutes are silent on the subject, no damages will be awarded him."

Our eminent domain statutes do not provide for recovery of such incidental damages.

■ Finally, the Yurcics contend that the Department was estopped to abandon the condemnation proceeding, relying upon such cases as McGee v. City of Los Angeles, 6 Cal.2d 390, 57 P.2d 925 (1936); Times-Mirror Co. v. Superior Court, 3 Cal.2d 309, 44 P.2d 547 (1935); and Piz v. Housing Authority, 132 Colo. 457, 289 P.2d 905 (1955).

Appellant's first amended claim for damages alleges, inter alia, the ownership of certain lands; that the Department "publicly announced, represented and otherwise manifested generally and to Defendants that it would take through condemnation" the lands in question; that the Yurcics thereafter entered into the option agreement regarding the lands which were thereafter conveyed away; that "in reliance upon the acts and conduct of" the Department the

Yurcics agreed with their vendee to be compensated for the land solely through the eminent domain proceedings by which the Department represented it would acquire the tract and that thereafter the Department abandoned its condemnation action as to the land. The claim then alleges that as a result the Yurcics will not be compensated for the land and have been damaged in a certain sum.

The elements of estoppel which must be pleaded and proven as a prerequisite to recovery have been stated by this court in In re Williams' Will, 71 N.M. 39, 376 P.2d 3 (1962) where we said:

"The elements of equitable estoppel are well defined in New Mexico and are fully set forth in the case of Westerman v. City of Carlsbad, 55 N.M. 550, 237 P.2d 356, wherein the court states:

'The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.' "

Clearly the amended claim for damages, viewed in the light most favorable to Mr. and Mrs. Yurcic, falls short of touching the bases which are needed to plead estoppel. An examination of the entire record, including the testimony taken in respect to, but not strictly confined to, the issue of attorney's fees, furnishes an insight into the reason for the shortcomings of the plead-

ing. Counsel simply did not have the facts at his disposal.

We have no quarrel with the cases we have mentioned which are relied upon by the Yurcics. They are somewhat unusual, but what makes them unusual is the rather shocking degree of aggravated and overreaching conduct of the condemnors which the appellate courts were considering. The condemnor's conduct in those cases immeasurably exceeded in degree those present here. For example, in McGee the court said that estoppel should be invoked in:

" * * * [T]hose exceptional situations, recognized in Times-Mirror Co. v. Superior Court, 3 Cal.2d 309, 44 P.2d 547, 557 * * * where justice and right require the invocation of the principle of estoppel in pais in favor of a citizen or private property and against a municipality."

In that case, the city had planned two condemnation proceedings involving parcels of land on which a building was located. The first proceeding was instituted during which the parties entered into a stipulation setting the value of the building and providing that compensation for the building was to be paid partially in the first and partially in the second proceeding. When the city later attempted to abandon the second proceeding, the court held it estopped because of the prior stipulation upon which condemnee had relied in tearing down the building.

In Times-Mirror, the condemnation suit had been tried, appealed, and reversed, when the city attempted to abandon a few days before the second trial. During the pendency of the suit the city-condemnor had adopted resolutions, formal plans, and written several letters indicating to condemnees and the public that it intended to condemn the land.

In Piz, the condemnor's "agents endeavored to get Piz (condemnee) to agree" to an unreasonably low price. The case proceeded to trial where a jury awarded a fig-

ure even above the amount condemnee had demanded and over twice the amount offered by the condemnor. At this point condemnor moved to dismiss and the trial court so ordered. The Colorado Supreme Court reversed on the basis of estoppel.

Nothing of the sort happened here that occurred in those cases, each of which had gone to trial. Here, the Department simply indicated a plan to condemn the property. This was all that had occurred when the Yurcics made their deal. There is no indication that the Department even knew of it.

The court did not err in dismissing the amended claim for damages.

■ The Department complains of the trial court's having awarded attorney's fees. The Highway Litigation Expenses Act [§ 55–13–1 et seq., N.M.S.A.1953 (1971 Pocket Supp.)] is mentioned but does not seem to be relied upon by the Yurcics, presumably because the matters and things of which they complain occurred prior to its effective date.

Under the general law, the award looks a little doubtful. State ex rel. Stanley v. Lujan, 43 N.M. 348, 93 P.2d 1002 (1939); Keller v. Cavanaugh, 64 N.M. 86, 324 P.2d 783 (1958); Gregg v. Gardner, 73 N.M. 347, 388 P.2d 68 (1963); Lanier v. Securities Acceptance Corporation, 74 N.M. 755, 398 P.2d 980 (1965); Riggs v. Gardikas, 78 N.M. 5, 427 P.2d 890 (1967); Nichols on Eminent Domain, supra.

But since no cross appeal was taken pursuant to Supreme Court Rule 7(2) (§ 21–2–1(7)(2), N.M.S.A.1953) there is nothing for us to consider on this score. Reynolds v. Ruidoso Racing Association, Inc., 69 N.M. 248, 365 P.2d 671 (1961); Daughtrey v. Carpenter, 82 N.M. 173, 477 P.2d 807 (1970).

The judgment is affirmed.

It is so ordered.

McMANUS, C. J., and MONTOYA, J., concur.