565 P.2d 655

STATE of New Mexico ex 'rel. STATE HIGHWAY DEPARTMENT OF NEW MEXICO, Petitioner-Appellee,

v.

Dudley C. SHAW et al., Exxon Corporation and Texaco, Inc., Defendants-Appellants.

No. 11143.

Supreme Court of New Mexico.

May 26, 1977.

As Amended on Denial of Rehearing June 30, 1977.

Hinkle, Bondurant, Cox & Eaton, Harold Hensley, Jr., Paul M. Bohannon, Roswell, for Exxon.

Rowley & Bowen, Stephen W. Bowen, John W. Anderson, Tucumcari, for Texaco.

Toney Anaya, Atty. Gen., V. Henry Rothschild, III, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

PAYNE, Justice.

In 1962 it became a matter of general knowledge that a by-pass, which would be a part of Interstate Highway 40, would be built in the Tucumcari, New Mexico area. Based upon this information, Texaco and Exxon, in separate transactions, acquired "floating options" to purchase tracts of property in the vicinity of the highway. The floating options gave the defendants the right to select a specific location within a general tract of land at such time as the exact location of the highway and its right-of-way became fixed by the State Highway Department. By 1969 the Highway Department began to acquire the property that would be necessary to construct the by-pass. During the year 1972 and continuing through April 24, 1973, the defendants maintained continuous contact with the Highway Department so that they would know when to exercise their options. Throughout 1972 and 1973 there were numerous conversations between representatives of Texaco and Exxon and officials in both the Design and Right-of-way Divisions of the Highway Department. The defendants were told that there would be no further taking of land by the State. In December, 1972, Texaco applied for and was granted a driveway permit based upon the

right-of-way maps as they then existed. On April 24, 1973, a representative of Exxon wrote the design engineer of the Highway Department desiring to know whether there would be any further taking by the State from the property Exxon wanted to purchase. The State replied by letter stating that it had acquired all the necessary property. As a result of the verbal assurances, the granting of the driveway permit, the letter and the right-of-way maps, defendants exercised their options in July of 1973 paying $85,000.00 each for their respective tracts of land. On May 6, 1974, the Highway Department issued a "final" right-of-way map which generally was in agreement with prior maps that had been used by the department. However, in July, 1974, the Highway Department amended its right-of-way map to show an additional thirteen-foot right-of-way taking from the front of the Exxon property. In December of 1974, another amendment was made taking a thirteen-foot right-of-way from the front of Texaco's property. Finally in March, 1975, another taking appeared on the right-of-way map showing for the first time a fifty-foot by one hundred seventeen-foot (50' x 117') drainage easement that bisects the Exxon property.

Condemnation proceedings were brought by the State against the defendants. Prior to trial, the parties stipulated that the district court would determine whether the evidence of value of the Texaco and Exxon tracts admissible at the trial should be the enhanced value due to the proximity of the freeway or the values of the land prior to enhancement. The trial court ruled that evidence of enhancement would not be admissible. We granted this interlocutory appeal and reverse the trial court.

The general rule of whether enhancement may be considered as an element of value is explained in 4 J. Sackman, Nichols' Law of Eminent Domain § 12.3151, at 12–293 (rev. 3d ed. 1976):

> The general rule is that any enhancement in value which is brought about in anticipation and by reason of a proposed improvement is to be excluded in determining the market value of such land, . . .

In *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), the Supreme Court of the United States stated:

> If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement. 317 U.S. at 376–377, 63 S.Ct. at 281.

The Court then stated an exception which has become the controlling rule of law:

> The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating a probable increase in value due to the Government's activities. Id. at 377, 63 S.Ct. at 281.

This rule has been followed by federal and state courts. *United States v. 2,353.28 Acres of Land, etc., State of Fla.,* 414 F.2d 965 (5th Cir. 1969); *United States v. 172.80 Acres of Land, etc.,* 350 F.2d 957 (3rd Cir. 1965); *Merced Irrigation District v. Wool-*

*stenhulme,* 4 Cal.3d 478, 93 Cal.Rptr. 833, 483 P.2d 1 (1971); *State, Department of Highways v. Colby,* 321 So.2d 878 (La.App. 1975).

■ The trial court determined that the lands being condemned were within the scope of the highway project at the time the State was first committed to it. The record reflects that the Department's design maps differed from its right-of-way maps[1] as to what lands would ultimately have to be acquired. The Department admitted to a mistake when it failed to transfer the extra right-of-way takings from its design specification plan to the right-of-way map. It is apparent from the record that the additional thirteen-foot takings that affect both Texaco and Exxon were contemplated in the original design specifications that were drawn up for the Department. The record also shows that the drainage easement that affected Exxon's property was on the 1970 construction plans. Texaco and Exxon take the position that since these additional takings were not added to the right-of-way maps until after the "final" map of May 6, 1974, they were not within the original scope of the highway project. We do not agree. The scope of a project is determined by a showing of what the State Highway Department intended. Although intent is subjective, the scope of a project as it related to the land necessary to complete the project can be determined by examining the objective acts of the department. The design and construction plans, although subject to possible diverse interpretation, are the primary tools in determining whether the land to be condemned was probably within the scope of the project involved. These plans support the finding of the trial court.

The defendants further assert that the principle of equitable estoppel precludes the State from denying their recovery of the enhanced value of their land. The events upon which the defendants base this claim are not in dispute. Exxon and Texaco exe-cuted options to purchase their property in July of 1973. They did this after considerable effort to determine the extent of the State's taking. They received repeated assurances from the Highway Department upon which they relied. The additional takings of which defendants complain were subsequently announced in 1974 and 1975.

In *State ex rel. State Highway Department v. Yurcic,* 85 N.M. 220, 511 P.2d 546 (1973), we discussed the application of the principle of estoppel as it would be applied against the State Highway Department. We said:

" 'The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.' " 85 N.M. at 223, 511 P.2d at 549.

The trial court set forth three reasons for not applying the principle of estoppel: (1) there was no false representation or concealment on the part of the Highway Department, (2) the defendants should not have relied on the April 24, 1973, letter from Mr. Bob Humble; and (3) the defendants had reason to know and means of discovering the probable extent of the project.

1. A right-of-way map is prepared by the Right-of-Way Division and shows the property that will have to be acquired by the State in order to construct the highway. This map is developed from the design specifications that are set forth on the maps provided by the Design Division of the Department.

The first reason cannot be used to defeat the defendants' claim of estoppel. The trial court failed to apply that part of the Yurcic test which triggers an estoppel claim when the "conduct . . . is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert . . .." It is clear that the Department is now adopting a position that is contrary to its representations to the defendants in 1973. Representations that are contrary to the essential facts to be relied upon, even though made innocently or by mistake, will support the application of the estoppel doctrine.

It must be assumed that Mr. Bob Humble was authorized to speak for the State Department. The letter he sent was pursuant to an inquiry referred to him by the supervising engineer of the Design Division. The letter was sent out over the signature block of L. G. Boles, the State Highway Engineer. Mr. Humble was thus authorized to speak for the Design Division and the Highway Department must be held responsible for the representations he made.

The trial court found that the defendants had "reasons to know and means of discovering the probable extent of the project." We have searched the record for evidence that might support this conclusion but have been unsuccessful. The testimony of all the witnesses, including the Highway Department personnel, was that no one knew the additional takings would be made until July, 1974, one year after defendants made their purchase. Although the design plans were available which showed that the additional property was probably within the scope of the project, these plans were never made available to the defendants.

We find that the defendants claim of estoppel against the State should prevail. The defendants, in good faith, relied upon the Department's maps and verbal assurances and paid the consideration of $85,000 each for their property. The State now wishes to condemn the property at values far less than what the defendants paid, based on the argument that the defendants should have searched out and understood the design plans. It is estopped from doing so. The enhancement of value due to the construction of the highway project may be used as evidence by the defendants in determining damages for the property that the Department now wishes to acquire. The ruling of the trial court is reversed and the case is remanded to the district court for further proceedings.

IT IS SO ORDERED.

SOSA, J., and FRED T. HENSLEY, District Judge, sitting by designation, concur.