1996–NMSC–071

930 P.2d 146

**Ramona LOPEZ, Plaintiff–Petitioner,**

**v.**

**STATE of New Mexico and Bernalillo County Metropolitan Court, Defendants–Respondents.**

No. 23184.

Supreme Court of New Mexico.

Dec. 4, 1996.

James A. Burke, Santa Fe, for Petitioner.

Robert Lohbeck, Santa Fe, for Respondents.

## OPINION

RANSOM, Justice.

1. Ramona Lopez brought a premises-liability suit against the Bernalillo County Metropolitan Court and the State after she tripped, fell, and was injured in a courtroom at Metro Court. The district court entered summary judgment dismissing the suit because Lopez had not provided the Risk Management Division with written notice of her claim within ninety days of her accident as required by NMSA 1978, Section 41–4–16(A) (Repl.Pamp.1996), and because there was no genuine issue of fact that either Metro Court (the governmental entity claimed to be at fault) or Risk Management had "actual notice of the occurrence" as contemplated under Section 41–4–16(B). Lopez argued that, because the Metro Court building administrator had prepared and sent an accident report to Risk Management, both Metro Court and the State had actual notice of the occurrence. Alternatively, she argued for the application of equity because the State was here doing business as the Bernalillo County Metropolitan Courthouse. We understand Lopez to be suggesting that the State be estopped from denying the efficacy of timely, written notice given to the county manager and clerk.

2. It is undisputed that Metro Court prepared and Risk Management received a written report about the accident in which Lopez was injured. The principal issue is whether actual notice that there might be a claim against Metro Court is evinced by circumstances surrounding the preparation of a report by the entity claimed to be at fault and the receipt of that report by an entity charged with compromising, adjusting, settling and paying claims. In an unpublished memorandum opinion, the Court of Appeals affirmed the dismissal, holding that "the acci-dent reports that were available to the correct governmental entity were insufficient *as a matter of law* to provide actual notice of Plaintiff's claim." (Emphasis added.) We granted certiorari.

3. Because Metro Court prepared and sent to Risk Management a report—not merely for statistical purposes—containing the date, time, and location of Lopez's accident, as well as a list of witnesses, a description of how the accident occurred, a description of the condition of the premises including the presence of a caution sign, and the type of serious injuries suffered by Lopez, we hold there was substantial evidence from which a court could conclude that the governmental entity allegedly at fault had actual notice that Lopez might file a claim. Alternatively, because the State was here doing business as the "Bernalillo County Metropolitan Court," there is a factual issue whether it should be estopped from denying the efficacy of timely notice given to the county manager and clerk.

4. *Facts and proceedings.* While exiting a row of seats reserved for spectators in a courtroom at Metro Court, Lopez tripped and fell, suffering a broken arm, a concussion, and bruises. A Bernalillo County sheriff's deputy immediately investigated the accident and, after speaking with witnesses, filled out an incident report. The report prepared by deputy Tapia indicates that on December 6, 1993, Lopez missed a step while exiting the court's seating area and fell, striking her head and arm. This report also indicates that paramedics were called to the scene and that Lopez was incapacitated, carried from the courtroom, and transported to the hospital. This report concludes by noting that there was a fluorescent "watch your step" sign in the courtroom.

5. The building administrator had knowledge of Lopez's fall and prepared an accident report that he forwarded, along with the report prepared by the deputy, to Risk Management, an agency of the General Services Department with statutory duties to "compromise, adjust, settle and pay claims." NMSA 1978, § 15–7–3(A)(4) (Repl. Pamp.1996). The "notice of incident" report prepared by the building administrator for

Metro Court provides the date, time, and location of Lopez's accident and also indicates that Lopez was transported to the hospital. Finally this report lists the names, addresses, and telephone numbers of three witnesses.

6. After the accident Lopez retained attorney James A. Burke to pursue claims for damages. Lopez contended that she tripped because the courtroom was not lighted adequately and that she was unable to prevent her fall because of a loose handrail. Believing Metro Court to be maintained by the County of Bernalillo, Burke sent a letter dated January 31, 1994, to Bernalillo County Manager Juan Vigil. In the letter Burke wrote: "We hereby give notice pursuant to the New Mexico Tort Claims Act of the existence of a claim which occurred on or about 12/6/93 in the Courtroom of Judge Gentry. We hope that we might be able to resolve the matter when Mrs. Lopez finishes treating with her physician." Burke sent this same letter to Bernalillo County Clerk Gladys M. Davis.[1] Burke received no response and filed suit against Bernalillo County on June 15, 1994. An attorney for the County informed Burke that the County did not maintain the Metro Court facilities. Burke immediately amended the complaint, substituting the State and Metro Court as defendants. Risk Management, acting on behalf of the State, filed an answer and the motion on which the case was dismissed.

■ 7. *There was substantial evidence of actual notice of claim under Section 41–4– 16.—The intent and purpose of the statute.* The purpose of the notice requirements of the Tort Claims Act "is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit." *New Mexico State Highway Comm'n v. Ferguson,* 98 N.M. 680, 681, 652 P.2d 230, 231 (1982). Notice under Section 41–4–16(B) "means the particular agency that caused the alleged harm must have actual notice before written notice is not required." *Id.; see also Powell v. State Highway & Transp. Dep't,* 117 N.M. 415, 418, 872 P.2d 388, 391 (Ct.App.), *cert.*

*denied,* 117 N.M. 524, 873 P.2d 270 (1994); *Smith v. State ex rel. Dep't of Parks & Recreation,* 106 N.M. 368, 371, 743 P.2d 124, 127 (Ct.App.1987). Here, Lopez alleges that Metro Court caused the injuries she suffered. Therefore, in order for her suit to be considered timely, Metro Court must have had actual notice of the occurrence within ninety days of her accident.

■ 8. Notice allows the governmental entity against whom a claim is made, or its insurer, to investigate the facts underlying an incident while they are still fresh and to question witnesses. *See, e.g., Ferguson v. State Highway Comm'n,* 99 N.M. 194, 196, 656 P.2d 244, 246 (Ct.App.1982), *cert. denied,* 99 N.M. 226, 656 P.2d 889 (1983). Similarly, notice allows the governmental entity to protect itself against false or exaggerated claims while also permitting it to identify and settle meritorious claims. *See id.* In the context of the Tort Claims Act, notice of claim provisions thus further the legislative policy of limiting the sphere of government liability. *Methola v. County of Eddy,* 95 N.M. 329, 331, 622 P.2d 234, 236 (1980) (discussing origin of and policies underlying Tort Claims Act). It is in light of this policy that we examine the adequacy of "actual notice" in this case.

9. *—The meaning of "actual notice."* In *City of Las Cruces v. Garcia* we held that actual notice for purposes of the Tort Claims Act means actual notice of the tort. 102 N.M. 25, 27, 690 P.2d 1019, 1021 (1984). In that case the City traffic department received a copy of a police accident report. We reviewed the report and "found nothing in it which would inform or notify the City traffic department that it may be subject to a lawsuit." *Id. Receipt* of a police report could provide actual notice "only where the report contains information which puts the governmental entity allegedly at fault on notice that *there is a claim against it,*" thereby satisfying the statutory purpose " 'to ensure that the agency allegedly at fault is notified that *it may be subject to a lawsuit.*'" *Id.* (quoting *New Mexico State Highway Comm'n v.*

---

**1.** While written notice (stating the time, place, and circumstances of the injury) is to be presented to Risk Management for claims against the

state, notice is to be presented to the county clerk for claims against a county. Section 41–4–16(A).

*Ferguson,* 98 N.M. at 681, 652 P.2d 230 at 231 (alteration in original)); *see also Frappier v. Mergler,* 107 N.M. 61, 64, 752 P.2d 253, 256 (Ct.App.1988); *Smith,* 106 N.M. at 372, 743 P.2d at 128.

10. In *Smith* the Court cited *Garcia* to support its holding that Section 41–4–16(B) "contemplates that the state must be given notice of a likelihood that litigation may ensue." 106 N.M. at 371, 743 P.2d at 127. Smith had spoken with officials of the State Parks and Recreation Commission concerning "the fact of [drownings] and that the Parks and Recreation Commission might be subject to a lawsuit." *Id.* We read *Smith* to hold that it was this notice to officials of the Parks and Recreation Commission which raised a factual issue concerning whether actual notice was given to defendant "sufficient to place the requisite state officials on notice as to the likelihood of a lawsuit being filed." *Id.* at 372, 743 P.2d at 128.

11. In *Frappier* the Court observed that *Garcia* alternately described the actual notice requirement as notice to the government entity allegedly at fault that "it *may* be subject to a lawsuit" and notice "that there *is* a claim against it." 107 N.M. 61 at 64, 752 P.2d 253 at 256. The *Frappier* Court found that any ambiguity raised by these terms was resolved by the Court in *Smith* which "determined that Section 41–4–16(B) does not require that the notice, whether a police report or other method, indicate a lawsuit 'will be' filed, but rather, that the notice must inform the proper governmental entity that there exists a 'likelihood' that litigation may ensue." 107 N.M. 61 at 64–65, 752 P.2d 253 at 256–57.

12. Since *Smith,* New Mexico courts consistently have applied the "likelihood that litigation may ensue" standard, looking at whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation. *See Marrujo v. New Mexico Highway Transp. Dep't,* 118 N.M. 753, 761, 887 P.2d 747, 755 (1994) (holding that accident reports "offered no suggestion that a tort had occurred or that a lawsuit was impending" and therefore

did not constitute actual notice); *Powell v. New Mexico State Highway and Transp. Dep't,* 117 N.M. 415, 418–19, 872 P.2d 388, 391–92 (Ct.App.1994) (finding that police report stating that the driver's intoxication and the speed of the vehicle contributed to the accident did not contain information that put "the governmental entity on notice that there is a claim against it" and therefore was insufficient to constitute actual notice); *Dutton v. McKinley County Bd. of Comm'rs,* 113 N.M. 51, 53, 822 P.2d 1134, 1137 (Ct.App.1991) (holding that "virtually every employee in the McKinley County building was actually aware of the occurrence" insufficient to provide "notice of the likelihood that litigation might ensue").

■ 13. —*Application to the facts.* Looking at the reports prepared by the governmental entity claimed to have been at fault and sent to Risk Management—whose statutorily-prescribed duties include the compromise, adjustment, settlement, and payment of claims—we conclude that there was substantial evidence from which a trial court could find that Metro Court and the State were on notice that Lopez might assert a claim. The fact that the very agency Lopez claims to be at fault—Metro Court—prepared one of the reports distinguishes this case from the cases of *Marrujo* and *Powell,* in which accident reports prepared by police and sent to the potentially liable Highway Department were held to be insufficient to have provided actual notice. Further, the level of factual detail in the reports prepared by Metro Court and sent to Risk Management—including the severity of Lopez's injuries, the fact that she was taken to the hospital, the deputy's notation that a "watch your step" sign was in the courtroom, and the building administrator's listing of witnesses—indicates that Metro Court understood Lopez might file a claim.

14. We also find another factor that distinguishes this case from *Marrujo* and *Powell.* In those cases the State Highway Transportation Department had received uniform accident reports filed by police. In *Marrujo* we concluded that these "reports served a purely statistical function." 118 N.M. at 761, 887 P.2d at 755. This conclu-

sion was warranted because the State Highway Transportation Department's duties do not include assessing the exposure to liability created by accidents on New Mexico's highways. In *Powell* the Court explained that the police report was received by the Transportation Statistics Bureau which received "65,000 to 70,000 accident reports per year." 117 N.M. at 417, 872 P.2d at 390. By contrast, while Risk Management does have duties that involve the study of risks and establishment of safety procedures, *see* NMSA 1978, § 15–7–3(A)(8), (9) (Repl. Pamp.1996), it has sole responsibility to "compromise, adjust, settle and pay claims," Section 15–7–3(A)(4). Thus the fact that the government agency allegedly at fault sent a detailed report to an agency charged with settling claims supports an inference that Metro Court recognized a likelihood of suit.

■ 15. Our prior cases have interpreted "actual notice of an occurrence" to require notice that there may be a claim. Our prior cases may have been understood to require a particular type of statement by a victim, such as, "I am going to sue," or the equivalent in actual notice from some other source. We now clarify our prior cases and hold that such a statement is not necessary. When the governmental entity allegedly at fault has knowledge of the facts and circumstances of the occurrence, it may also have knowledge of its own potential liability. A reasonable inference of the likelihood of suit may arise from such knowledge. The facts of this case permit such an inference. Therefore, the summary judgment must be reversed.

■ 16. —*Actual notice is a threshold issue to be heard by the trial court.* The legislature has made actual notice of the occurrence an issue that may be the determinative factor in a given suit, and certainly one worthy of an evidentiary hearing for the court to determine whether, from the totality of circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation. Because under Section 41–4–16(B) actual notice is a jurisdictional question and separate from the ultimate issue of liability, whether the facts give rise to a reasonable inference that a claim may be filed is a threshold inquiry to be resolved by the court. *See Carrillo v. Rostro,* 114 N.M. 607, 625, 845 P.2d 130, 148 (1992) (Ransom, J., specially concurring). The trial court must hold an evidentiary hearing in this case to decide the threshold issue whether, from actual notice of the occurrence, Metro Court was on notice that it may be subject to a claim.

■ 17. *Estoppel is a genuine issue of fact to be resolved on its merits by the trial court if the agency allegedly at fault did not have actual notice.* As support for her argument that failure to provide timely, written notice to the State should not bar her suit, Lopez relies heavily on the fact that the State was here doing business as the *Bernalillo County* Metropolitan Court. Essentially, Lopez argues that the State should be estopped from asserting her failure to provide a timely notice of claims because the name of the court would lead a reasonable person to conclude that it was maintained by the county rather than the state. She also points out that, with the sole exception of the Bernalillo County Metropolitan Court, county courts statewide are maintained by the counties in which they sit. Lopez thus asks that we recognize an equitable exception to the strict notice requirements of Section 41–4–16.

18. In *Westerman v. City of Carlsbad* we stated:

The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

55 N.M. 550, 555–56, 237 P.2d 356, 359 (1951) (quoting 19 Am.Jur. *Estoppel* § 42, at 642–43

(1939) (footnotes omitted)). This Court subsequently has used these elements to determine whether under the factual circumstances of a given case the state should be estopped. *See, e.g., National Advertising Co. v. State ex rel. New Mexico Highway Comm'n,* 91 N.M. 191, 194, 571 P.2d 1194, 1197 (1977); *State ex rel. State Highway Dep't v. Shaw,* 90 N.M. 485, 488, 565 P.2d 655, 658 (1977); *State ex rel. State Highway Dep't v. Yurcic,* 85 N.M. 220, 222–23, 511 P.2d 546, 548–49 (1973).

19. In *Shaw* we held that the State was estopped from condemning certain land in the Tucumcari area at values less than the defendants had paid. 90 N.M. at 488, 565 P.2d at 658. Before the defendants had purchased the land, they had been assured by the State that it would not take further land to construct a by-pass for Interstate Highway 40. *Id.* at 485, 565 P.2d at 655. The defendants also had been shown plans which indicated that the land they eventually purchased was outside the scope of the highway project. Although design plans indicating that the land defendants purchased was within the scope of the highway project existed at the time of the purchase, because defendants had not been shown these plans, because they had been shown other plans indicating that the land was outside the scope of the project, and because they had been assured by an employee of the highway department that the State would not be taking further land, we held that estoppel was proper.

■ 20. New Mexico courts have been reluctant to apply estoppel against the state and its agencies. *See, e.g., National Advertising Co.,* 91 N.M. at 193, 571 P.2d at 1196; *Ross v. Daniel,* 53 N.M. 70, 75, 201 P.2d 993, 996 (1949). Nevertheless, estoppel will be applied against the state when "right and justice demand it." *State ex rel. Department of Human Servs. v. Davis,* 99 N.M. 138, 139, 654 P.2d 1038, 1039 (1982). Other states, including New York, have concluded that under appropriate factual circumstances a governmental entity may be estopped from asserting a notice-of-claims statute as a defense. *Bender v. New York City Health & Hosps. Corp.,* 38 N.Y.2d 662, 382 N.Y.S.2d 18, 21–22, 345 N.E.2d 561, 564–65 (1976) (remanding for further factual development

of patient's claims that municipal hospital had "failed to indicate its autonomy in a manner similar to other autonomous city agencies" under state law requiring written notice be given to statutorily created corporation); *see also Moskol v. Sood,* 404 F.Supp. 916, 919–20 (W.D.N.Y.1975) (holding that municipal hospital was estopped from asserting a notice-of-claims defense when hospital name did not indicate that hospital was municipally operated). *See generally* Annotation, *Waiver of, or Estoppel to Assert, Failure to Give Required Notice of Claim of Injury to Municipality, County, or Other Governmental Agency or Body,* 65 A.L.R.2d 1278, 1285–91 (1959).

21. By choosing to do business as the Bernalillo County Metropolitan Court, the State was representing to all persons who might wish to assert claims that Bernalillo County was the entity responsible for the maintenance of the courthouse. Although counsel for plaintiff could have discovered that the Bernalillo County Metropolitan Court was an agency of the state by reference to the statutes, *see* NMSA 1978, § 34–8A–8 (Repl.Pamp.1996), the fact that such inquiry was necessary was not apparent because of the name of the courthouse. We conclude that the State's "conduct" here raises a factual issue for the court whether estoppel is warranted.

22. *Conclusion.* Because Metro Court prepared and sent an investigative report to Risk Management, there is a genuine, threshold factual issue regarding actual notice to be decided by the trial court in an evidentiary hearing. If the trial court concludes that Metro Court did not have actual notice, there is a factual issue for the court as to whether the State should be estopped from claiming failure to provide timely, written notice. We therefore reverse the entry of summary judgment and remand for proceedings consistent with this opinion.

23. **IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI, MINZNER, and McKINNON, JJ., concur.