This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**EUGENIA MCEADDY, Individually and as Wrongful Death Personal Representative of JULIUS MCEADDY, Deceased,**

Plaintiff-Appellant,

v.                                                          NO. 33,576

**NEW MEXICO STATE AGENCY FOR SURPLUS PROPERTY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Will Ferguson & Associates
David M. Houliston
Albuquerque, NM

for Appellant

Brennan & Sullivan, P.A.
Frank D. Weissbarth
James P. Sullivan
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     Plaintiff Eugenia McEaddy appeals the district court's ruling dismissing her case for failing to timely serve a tort claim notice on the State of New Mexico Risk Management Division (risk management). Plaintiff's five arguments can be consolidated into two issues: (1) whether the State may be estopped from invoking the notice of claims provision in the Tort Claims Act (the TCA), NMSA 1978, § 41-4-16(C) (1977), when right and justice demand; and (2) whether Plaintiff was entitled to equitable tolling under the discovery rule. We hold that right and justice demand that estoppel be applied against the State under the unique factual circumstances in this case and reverse.

**BACKGROUND**

{2}     This case involves a tragic accident. On August 3, 2011, Julius McEaddy and his companions were riding their motorcycles westbound on Interstate 40 near Tucumcari, New Mexico. Close to milepost 329, McEaddy came upon a large plastic object in the middle of the highway and, unable to avoid it, lost control of his motorcycle. As a result of the collision, McEaddy was thrown from the motorcycle and suffered fatal injuries. The object on the road was the bucket liner of a bucket truck aerial lift device.

{3}     In late June 2012, some eleven months after the accident, Plaintiff, the widow of Julius McEaddy, hired an attorney in Tennessee who then retained co-counsel

2

(counsel) in New Mexico. At the time counsel was retained, the only information about the plastic object with which McEaddy collided was that contained in the New Mexico State Police Uniform Crash Report (State Police Report). The State Police Report described the plastic object and noted several markings on it including the name "Horizon Fleet." The investigating officer wrote that he researched the name "Horizon Fleet" and found a website with the name of a company named ETI. The officer called ETI and explained to a person who identified himself as the director of Horizon Fleet Services about the plastic object and what had happened to McEaddy. The director told the officer that he would "ask around" and "research the information" he was given and that he would call the officer back. He never did.

{4}    After speaking with the officer who wrote the State Police Report, counsel independently learned through ETI's[1] website that it was a manufacturer of aerial lifts and that it was connected with Horizon Fleet Services. Based on the information in the State Police Report and counsel's investigation, Plaintiff filed a complaint for damages against ETL on September 21, 2012.

{5}    Several months later, during the course of discovery, counsel learned that the bucket liner in fact had been sold to the New Mexico Agency for Surplus Property (the Agency) in June or July 2011. Further investigation revealed that two days before

[1]ETI was an Oklahoma corporation called Equipment Technology, Inc. that subsequently changed its name to Equipment Technology, L.L.C. (ETL).

3

the accident, John Francisco, an employee of the State of New Mexico's General Services Department, drove a tow truck with a trailer to Oklahoma to pick up two trucks that had been donated to the State of New Mexico by the federal government. One truck was a bucket truck located at the Fort Sill Army Installation, and the other was a sweeper truck located at Altus Air Force Base. Francisco drove the trailer with the two trucks loaded on it back to Santa Fe, New Mexico, on August 3, 2011, the date of the accident. Because he returned after business hours, Francisco left the trucks on the trailer in the yard intending to help unload them the next day. However, the trucks were unloaded by the time he returned to work, and he did not handle the bucket truck again. The Agency ultimately donated it to the Northwest New Mexico Regional Solid Waste Authority. No one ever reported to the Agency that the bucket liner was missing. Further, the Agency contends that the first time it had any knowledge that there might have been an accident involving the bucket liner was on January 22, 2013, when Francisco received an e-mail from a claims examiner at Fort Sill.

{6}     Within a matter of days of learning that the bucket liner belonged to the Agency, on January 28, 2013, Plaintiff hand-delivered a letter to risk management giving them notice under the TCA of a claim for wrongful death and property damage. On February 13, 2013, Plaintiff filed an amended complaint adding the Agency as a defendant in the case. Among other things, Plaintiff alleged that she was prevented from giving notice within the six-month period required by the TCA because the

Agency failed to notify the public safety authorities that the bucket liner had been lost somewhere along the route from Fort Sill, Oklahoma to Santa Fe, New Mexico, and because of time-consuming discovery to learn that on the date of the collision the bucket truck was owned by the Agency.

{7} The Agency filed a motion to dismiss or in the alternative for summary judgment for untimely tort claim notice. After briefing was complete, the district court held a hearing at which Plaintiff's counsel conceded that the six-month notice period ran before Plaintiff did anything. The district court requested supplemental briefs on that and other issues, which both parties timely submitted. On January 11, 2014, finding that further hearing was not necessary, the district court granted the Agency's motion and dismissed Plaintiff's claims with prejudice. The district court concluded that Plaintiff's delay resulted in the claim being untimely because, by her own admissions, Plaintiff "did nothing for ten months at which point she hired an attorney." The district court also found that Plaintiff identified the Agency as a possible defendant eighteen months after the accident and that, had she acted with due diligence, she would instead have known it was a possible defendant within seven months after the accident. Lastly, the district court noted that, given Plaintiff's admitted lack of diligence, there was no question of fact in dispute. This appeal followed.

**STANDARD OF REVIEW**

5

{8} Plaintiff raises five issues, contending that the district court erred in granting the Agency's motion to dismiss or in the alternative for summary judgment. Because the record includes matters outside of the pleadings, we review this as a summary judgment case. *See First Sw. Fin. Servs. v. Pulliam*, 1996-NMCA-032, ¶ 4, 121 N.M. 436, 912 P.2d 828 (stating that we review motions to dismiss as motions for summary judgment when the district court considered matters outside the pleadings in making its ruling). We review this issue de novo. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* When reviewing a motion for summary judgment, an appellate court must "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). For purposes of our analysis, this case presents no issue of disputed fact.

**DISCUSSION**

{9} We frame the question in this case as follows: Should the Agency be permitted to benefit from the TCA's notice requirements when Plaintiff legitimately had no indication at the outset that the owner of the plastic object that caused McEaddy's death might be a governmental entity and that the jurisdictional clock was ticking?

6

The undisputed facts establish that nothing in this case gave anyone—including allegedly the Agency itself—any idea of the Agency's involvement at the time of the accident and that Plaintiff notified risk management of her claim within days of learning that the Agency might be accountable. Based on the facts and circumstances of this particular case, we conclude that, for the purpose of preventing manifest injustice, Plaintiff's failure to provide timely notice to risk management should not bar her suit, and the Agency is therefore estopped from claiming immunity under the TCA.

{10} It is well established that our courts rarely apply the doctrine of equitable estoppel against a governmental entity, and we only do so under compelling circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice so demand. *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 22, 131 N.M. 450, 38 P.3d 891; *see Vill. of Angel Fire v. Bd. of Cnty. Comm'rs of Colfax Cnty.*, 2010-NMCA-038, ¶ 24, 148 N.M. 804, 242 P.3d 371. To determine whether estoppel is warranted, the conduct of both the party to be estopped and the party seeking relief must be examined.

{11} With regard to the party to be estopped, the evidence must show

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or . . . expectation,

7

that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts.

*Lopez v. State*, 1996-NMSC-071, ¶ 18, 122 N.M. 611, 930 P.2d 146 (internal quotation marks and citation omitted). Misrepresentations contrary to the material facts to be relied on, even when made innocently or by mistake, will support application of the doctrine. *Green v. N.M. Human Servs. Dep't*, 1988-NMCA-083, ¶ 4, 107 N.M. 628, 762 P.2d 915.

{12}    The party seeking enforcement of equitable estoppel on the other hand must show "(1) [l]ack of knowledge and of the means of knowledge of the truth as to the facts in question;" (2) detrimental reliance on the other party's conduct; and "(3) action based thereon of such a character as to change [her] position prejudicially." *Lopez*, 1996-NMSC-071, ¶ 18 (internal quotation marks and citation omitted). The New Mexico Supreme Court has amplified these elements, specifying that the party seeking to assert the doctrine must also demonstrate that its reliance was reasonable. *See Taxation & Revenue Dep't v. Bien Mur Indian Mkt. Ctr., Inc.*, 1989-NMSC-015, ¶ 11, 108 N.M. 228, 770 P.2d 873.

{13}    We begin with our Supreme Court's decision in *Lopez*, which applied the doctrine of equitable estoppel in similar circumstances. There, the plaintiff was injured after she tripped and fell at the Bernalillo County Metropolitan Court (the court). 1996-NMSC-071, ¶ 1. She sued the court, but failed to provide the risk management

8

division with written notice of her claim within ninety days of her accident. *Id.* According to the plaintiff, she did not know and it was not apparent to her that the court was actually maintained by the state and was thus subject to the TCA. *Id.* ¶ 17. As a result, the plaintiff argued that the state should be estopped from asserting a defense of failure to provide timely notice because the name of the court would lead a reasonable person to conclude that it was a county, rather than a state, facility. *Id.* Our Supreme Court agreed and noted that, although counsel for the plaintiff could have discovered that the court was an agency of the state by referencing the statutes, such inquiry was not necessary because the name of the courthouse was not apparent. *Id.* ¶ 21. Ultimately, the Supreme Court held that, because the court had prepared and sent an investigative report to risk management, there was an issue of fact regarding receipt of actual notice. *Id.* ¶ 22. Actual notice is not at issue in this case; however, the reasoning and application of the principle of equitable estoppel in *Lopez* is instructive.

**{14}** Here, there was no indication anywhere that the Agency owned the bucket liner, and the Agency itself contends it had no knowledge that the bucket liner was missing until it received an e-mail from counsel in January 2013. The State Police Report contained the only available information concerning ownership of the liner, and nothing in that report would have put a person on notice that a claim against a governmental agency might exist. We acknowledge that the result here might have been different if there was *any* information that would tend to implicate a

9

governmental agency. However, based on the facts before us, there was nothing—either in the State Police Report or on the liner itself—to indicate that any additional inquiry was necessary. Even after Plaintiff filed her original complaint, there was no hint that the Agency and/or another state entity might be a defendant. Simply put, nothing about the bucket liner in this case would have given anyone any idea that it was owned by the government, and both the State Police and the Agency—whether intentionally or not—created the (mis)perception that this was an accident for which the Agency was not accountable. This is not a situation where Plaintiff closed her eyes to means of information accessible to her concerning ownership of the bucket liner. Instead, she focused her attention on the only details that were available to her and had no reason to suspect the Agency's involvement until she received ETL's discovery responses.

{15} Although we agree with the Agency's general assertion that once McEaddy's injury was ascertainable, the six-month notice period began to run, we are not persuaded that Plaintiff's failure to serve her tort claim notice no later than February 3, 2012, is a bar to her suit in this case. The Agency correctly states that the purpose of the notice requirement is to enable the governmental entity or its insurance company to investigate the matter while the facts are accessible, to question witnesses, to protect against simulated or aggravated claims, and to consider whether to settle meritorious claims prior to the bringing of suit. *Ferguson v. N.M. State Highway*

10

*Comm'n*, 1982-NMCA-180, ¶ 12, 99 N.M. 194, 656 P.2d 244. We recognize the policy considerations animating the notice rule. However, that purpose is not served under these circumstances. Moreover, the Agency itself professes that it did not know the bucket liner from its own truck was missing, and it cannot, therefore, be substantially prejudiced as a result of Plaintiff's failure to meet the notice requirement. The involvement of a governmental entity in the tort was never apparent from the outset to anyone, and Plaintiff should not be penalized as a result, particularly when she provided proper notice within days of discovering that the Agency was a potentially liable party.

{16}     Finally, and as a practical matter, we note that such a constrained reading of the TCA's notice provision would require plaintiffs to immediately begin an investigation upon the occurrence of a tort on the off-chance that the government might be a culpable party. To do so would effectively compel plaintiffs to notify governmental entities immediately of a potential claim whether or not one actually existed. In our view, this would not only be unjust but unreasonable. Consequently, we conclude that equitable considerations govern this case, and we reverse the decision of the district court dismissing Plaintiff's claims against the Agency.

**CONCLUSION**

{17}     For the reasons set forth above, we reverse the district court's order granting the Agency's motion to dismiss.

11

{18}   **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**