COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


KATHERINE D. HILLIARDS
                                        OPINION BY
v.   Record No. 2460-97-4          JUDGE CHARLES H. DUFF
                                      NOVEMBER 10, 1998
LARRY D. JACKSON, COMMISSIONER,
 VIRGINIA DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF PAGE COUNTY
                 Porter R. Graves, Jr., Judge

         John E. Whitfield (Blue Ridge Legal Services,
         Inc., on briefs), for appellant.

         Donald G. Powers, Assistant Attorney General
         (Mark L. Earley, Attorney General; Ashley L.
         Taylor, Jr., Deputy Attorney General;
         Siran S. Faulders, Senior Assistant Attorney
         General, on brief), for appellee.



     Katherine D. Hilliards appeals the Page County Circuit

Court's decision affirming an administrative decision of the

Virginia Department of Social Services.  The Department ruled

that Hilliards was eligible to receive ten dollars per month in

food stamps.  Hilliards contends the Department erroneously

included the proceeds from the sale of her mobile home as income

when calculating her food stamp benefits.  For the following

reasons, we reverse.

                              I.

     On December 10, 1990, Hilliards and her husband bought a

mobile home, which they financed with a $15,000 consumer note

from Crestar Bank.[1]  They subsequently moved from Shenandoah County to Page County and, on April 23, 1992, sold the mobile home to Virginia Tusing for its fair market value of $10,000.  At the time, the Hilliards had no equity in the mobile home, which was fully encumbered by the Crestar note.  Tusing was unable to obtain credit to purchase the mobile home, so the parties entered into a contract, which provided, in pertinent part:

> 1.  That the purchase price shall be Ten Thousand Dollars ($10,000.00), which shall be paid by the Purchaser by the assumption of the obligations under that note dated December 10, 1990, made by the Sellers and Payable to Crestar Bank.
>
> 2.  That the Purchaser shall make all payments on such note as they become due and payable, such installments being in the amount of Two Hundred Fourteen and 92/100 Dollars ($214.92); and further that if any payment is not made in a timely manner, the Purchaser shall be responsible for any late charges and collection costs.

Tusing was responsible for providing and paying for all utilities.  The parties also agreed to execute any other documents necessary to perfect the transaction, including, but not limited to, an application for transfer of title.  Tusing also contracted with Hilliards to rent the lot on which the mobile home was located for $85.08 per month.[2]

_____

[1]The 1990 Crestar note included the refinancing of a pre-existing debt and was secured by the mobile home, the Shenandoah County property on which the mobile home was located, and a truck.

[2]Hilliards does not challenge the Department's finding that the lot rent was unearned rental income attributable to her.

On October 6, 1992, Hilliards, her husband, and Tusing executed a modification agreement "to more clearly reflect their original intentions without changing the substance of the original transaction."[3]  The modification agreement specified that Tusing was responsible for paying all property taxes assessed on the mobile home.  The agreement also explained as follows:

> [I]n in the event of default, the Purchaser shall in all respects hold all of the rights and be responsible for all of the liabilities of the Sellers, as set forth in the various provisions of the [Crestar Bank] note and security agreement . . . as well as the provisions of Article Nine of the Uniform Commercial Code as enacted by the Commonwealth of Virginia.

Crestar was not a party to either agreement.  The Department concedes that Hilliards did not enter into this agreement with the intent to evade food stamp eligibility limits.

On April 27, 1992, Hilliards applied for food stamp benefits in Page County.  The local Department of Social Services included neither the mobile home nor the property on which it was located as resources for purposes of calculating Hilliards' eligibility.  The Department did, however, treat Tusing's monthly payments of $214.92 as unearned rental income attributable to Hilliards.  The Department advised Hilliards that she was entitled to deduct her

---

[3]The original Crestar note included a balloon payment not addressed by the initial agreement executed by Hilliards and Tusing.  The modification agreement makes it clear that Tusing was only assuming that portion of the obligation that financed the mobile home.

interest expenses from this "income," but Hilliards failed to provide documentation to support any such deduction.

Hilliards appealed the Department's initial determination to an administrative hearing officer. The hearing officer found that Tusing's payments constituted vendor payments because she was making payments on a household expense directly to Hilliards' creditor. But, because Tusing's payment was "legally obligated and otherwise payable to the household," it was not excludable from Hilliards' income. Without providing any rationale, the hearing officer affirmed the Department's initial determination that the sale proceeds constituted unearned rental income. The State Board of Social Services and the Page County Circuit Court both subsequently affirmed the hearing officer's decision.

## II.

Under the Virginia Administrative Process Act, Code §§ 9-6.14:1 through 9-6.14:25, the party complaining of an agency action has the burden of demonstrating an error of law subject to review. See Code § 9-6.14:17. See also Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 241, 369 S.E.2d 1, 6 (1988). The appellate court must review the facts in the light most favorable to the agency, with due consideration of "the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 9-6.14:17. See also Bio-Medical Applications of Arlington, Inc. v. Kenley, 4 Va. App. 414, 427,

- 4 -

358 S.E.2d 722, 729 (1987). A review of the agency's decision regarding a claimant's eligibility for food stamps "shall be based solely upon the agency record, and the court shall be limited to ascertaining whether there was evidence in the agency record to support the case decision of the agency acting as the trier of fact." Code § 9-6.14:16(B).

We accord great deference to an administrative agency's interpretation of the regulations it is responsible for enforcing. See Arellano v. Pam E. K's Donuts Shop, 26 Va. App. 478, 483, 495 S.E.2d 519, 521 (1998). See also Jackson v. W., 14 Va. App. 391, 400-01, 419 S.E.2d 385, 390 (1992). Our review is limited to determining whether the administrative agency's interpretation of its own rules was reasonable. See Classic Floors, Inc. v. Guy, 9 Va. App. 90, 93, 383 S.E.2d 761, 763 (1989). But "the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination." Johnston-Willis, 6 Va. App. at 243, 369 S.E.2d at 7-8. We will overturn the Department's interpretation of the rules and regulations governing food stamp eligibility if it is arbitrary and capricious. See Life Care Center of New Market v. Dept. of Medical Assistance Services, 25 Va. App. 513, 521, 489 S.E.2d 708, 712 (1997).

The facts in this case are not in dispute. The issue is the agency's application of the food stamp eligibility regulations to Hilliards' situation. Because this is an area within the special

expertise of the Department, we owe deference to its interpretation of the eligibility requirements. Nevertheless, to determine whether the Department correctly applied the law to the facts in this case, we must look to the laws and regulations governing food stamp eligibility.

III.

The purpose of the food stamp program is to provide assistance to individuals with limited incomes and resources to ensure that their basic nutritional needs will be met. See 7 U.S.C.A. §§ 2011 and 2014(a). In determining whether an individual is eligible for food stamps, the Department must look to the applicant's resources, see 7 C.F.R. § 273.8, and income. See 7 C.F.R. § 273.9.[4] "Household income for purposes of the food stamp program shall include all income from whatever source . . . ." 7 U.S.C.A. § 2014(d). The statute specifically excludes from income "any gain or benefit which is not in the form of money payable directly to a household." 7 U.S.C.A. § 2014(d)(1).

The statutory definition of income is mirrored by the definition of income found in the food stamp regulations promulgated by the United States Department of Agriculture. "Income" includes the gross income from any self-employment enterprise, and the ownership of rental property is considered a

_____

[4]Unless otherwise noted, all citations to the Code of Federal Regulations and the Department's food stamp policy manual are to the versions included in the Joint Appendix filed with this Court.

self-employment enterprise.  See 7 C.F.R. § 273.9(b)(1)(ii).  If an individual is actively engaged in managing the rental property less than twenty hours each week, then the rental income is considered as unearned income.  See id.

The regulations provide that the only permissible exclusions from income are those specifically identified by regulation.  See 7 C.F.R. § 273.9(b) and (c).  The federal regulations list those items that are excluded from an applicant's income, and provide that "[o]nly [these] items shall be excluded from household income and no other income shall be excluded."  7 C.F.R. § 273.9(c).

One exclusion identified in the regulations is for "vendor payments."  See 7 C.F.R. § 273.9(c)(1).  "Money payments that are not payable directly to a household, but are paid to a third party for a household expense, are vendor payments . . . ."  See id.  "For example, if a relative or friend, who is not a household member, pays the household's rent directly to the landlord, the payment is considered a vendor payment and is not counted as income to the household."  7 C.F.R. § 273.9(c)(1)(i).  But the regulations include as income payments "legally obligated and otherwise payable to the household, but which are diverted by the provider of the payment to the third party for a household expense."  7 C.F.R. § 273.9(c)(1)(iv).  An example of such an "obligatory" vendor payment is an employer who, instead of paying an employee directly for wages owed, diverts those

wages to the employee's landlord to pay the employee's rent.  See id.

Without any explanation, the Department classified Tusing's payments as rental income. We were unable to find any definition of "rent" or "rental income" in the regulations or the statutes governing food stamps. Accordingly, we must look to the everyday and ordinary meaning of these terms. See Virginia Employment Comm'n v. Fitzgerald, 19 Va. App. 491, 495, 452 S.E.2d 692, 694 (1995). Black's Law Dictionary (6th ed. 1990) defines rent as "[c]onsideration paid for use or occupation of property. In a broader sense, it is the compensation or fee paid, usually periodically, for the use of any rental property, land, buildings, equipment, etc." Id. at 1297.

Hilliards was not renting the mobile home to Tusing. She sold her ownership interest in the mobile home to Tusing. The fact that the purchase was structured on an installment basis with monthly payments due and payable to Crestar Bank did not transform the contract of sale into a rental agreement. We hold, therefore, that the Department's ruling classifying the sale proceeds as rental income was arbitrary and capricious.

We also reject the Department's conclusion that Tusing's payments under the contract of sale constituted vendor payments includable as income to Hilliards. The Department found that Tusing was paying a "household expense." But Hilliards sold to Tusing the asset underlying the obligation to Crestar. By contract, Tusing purchased all the rights to and responsibilities

for the mobile home and obtained equitable title to it. Once Hilliards executed the contract with Tusing, the payments on the loan were no longer a "household expense" of Hilliards. Rather, Hilliards became a de facto surety on the loan. Since Tusing was not paying a "household expense," the transaction was not an obligatory vendor payment that would be includable as income.

This case is distinguishable from the examples of includable vendor payments provided in the regulations. For example, where an employer diverts wages owed to an employee to pay the employee's rent or mortgage, the employer gains no right of possession or ownership over the employee's residence. Likewise, the Hilliards-Tusing transaction bears no resemblance to a garnishment. See 7 C.F.R. § 273.9(c)(1)(iv).

We conclude that the nature of the transaction entered into between Tusing and Hilliards was not one contemplated by the Department of Agriculture when it promulgated the regulations regarding vendor payments. Accordingly, the Department's classification of this sale as a vendor payment includable as income was arbitrary and capricious. Moreover, our review of the pertinent regulations reveals no other regulation addressing the purchase arrangement entered into between Hilliards and Tusing. We must, therefore, return to the federal statute for guidance. See Ledbetter v. McDonald, 434 S.E.2d 763, 764 (Ga. App. 1993) ("Because no exclusion found in 7 CFR § 273.9(c) applies, we must look to the controlling statute.").

The statutory definition of income excludes "any gain or benefit which is not in the form of money payable directly to a household."  7 U.S.C.A. § 2014(d)(1).  In exchange for a depreciating asset, Tusing assumed the Crestar note payments and relieved Hilliards of a significant monthly expense.  Although Tusing's assumption of the note constituted a "gain or benefit" for Hilliards, the payments were not "in the form of money payable directly to the household."  Accordingly, Tusing's payments on the Crestar note were not income attributable to Hilliards, and the Department erred when it included these payments when calculating Hilliards' eligibility for food stamp benefits.

For the reasons stated above, the decision of the circuit court is reversed.  The matter is remanded to that court with instructions to direct the Page County Department of Social Services to proceed in a manner consistent with this decision.

<u>Reversed and remanded.</u>