2008-NMCA-127

192 P.3d 1230

Hazel WATERS–HASKINS,
Petitioner–Appellant,

v.

NEW MEXICO HUMAN SERVICES DE-
PARTMENT, Income Support Division,
and Pamela Hyde, Secretary, Respon-
dents–Appellees.

No. 26,891.

Court of Appeals of New Mexico.

July 8, 2008.

Certiorari Granted, No. 31,300,
Sept. 15, 2008.

New Mexico Legal Aid, Clark de Schwein-
itz, Santa Fe, NM, New Mexico Legal Aid,
Joel Jasperse, Gallup, NM, for Appellant.

Office of General Counsel, New Mexico
Human Services Department, Susan Sita, As-
sistant General Counsel, Santa Fe, NM, for
Appellees.

## OPINION

ALARID, Judge.

{1} We granted certiorari to review a
judgment of the district court upholding an
administrative decision of the Human Ser-
vices Department (Department) establishing
a claim for overpayment of food stamp bene-
fits and rejecting the food stamp recipient's
defense that the Department should be equi-
tably estopped from recovering the overpay-
ment because the overpayment resulted sole-
ly from administrative error and without
fault on the part of the food stamp recipient.
We reverse on the ground that it is prema-
ture to address equitable defenses because
the Department has not yet exercised its
authority under federal law to settle, adjust,
or compromise the overpayment claim.

## BACKGROUND

{2} We have taken the following summary
of the operative facts directly from the De-
partment's brief:

Appellant took care of her two grand-
children first as a foster parent and then
as a parent after she adopted them. Ap-
pellant received a subsidy from the New
Mexico Children Youth & Families Depart-
ment (CYFD) to help her care for her
grandchildren while they were in foster
care. This subsidy was not counted as
income to the household for Food Stamp
benefits while appellant's granddaughters
were foster children. Appellant adopted
her grandchildren. The Second Judicial
District [Court] issued a Final Decree of

Adoption on November 24, 1997. Appellant then received an adoption subsidy from the CYFD to help her to care for her adopted children. The subsidy was $1,040.00 per month for both children.

Appellant filled out and signed an application for Food Stamp recertification on March 22, 2004 with the Income Support Division of the Human Services Department (Department). Appellant also filled out and signed an application for decertification on September 21, 2004. On both of these applications, Appellant included as income the amount that she received from the CYFD for the adoption subsidy. The application packet includes a statement of Rights and Responsibilities that a household is responsible to pay back benefits that the household was ineligible to receive. This is also explained to the client.

Pursuant to Department regulations, the foster care subsidy can be excluded from the household income for Food Stamp benefits purposes, and adoption subsidy is not. The adoption subsidy was erroneously excluded from the household income after Appellant adopted her grandchildren. In addition to the adoption subsidy, Appellant received income of $416.00 of Old Age and Survivors Insurance and Disability Insurance (OASDI) and $124.00 of Supplemental Security Income. Appellant's total income (including the adoption subsidy) was $1,580.00 for the claim period. [Applying] ... the standard deduction of $134.00 ... Appellant's [net] income [was] $1,446.00. The maximum net income eligibility for a household of three people for the claim period was $1,306.00. Appellant's income was over the maximum eligibility limit for the claim period. Appellant erroneously received Food Stamp benefits for the claim period of February 2004 to January 2005. One of Appellant's representatives at the fair hearing admitted that [Appellant] was ineligible for Food Stamps for the period from February 2004 through January 2005. The Department discovered the error when a Quality Control Review was conducted in 2004. The Restitution Bureau of the Department gave Appellant notice that she may have received benefits in error.

## DISCUSSION

■ {3} The Department's reliance on the passive voice—"[t]he adoption subsidy was erroneously excluded from the household income"—does not disguise the crucial operative fact: the *Department*, not Appellant, erroneously excluded the adoption subsidy from the household income. *Id.* There is no dispute that Appellant provided the Department with all the information that it needed to correctly apply the law. It appears from the testimony of the Department's witnesses that the Department made an internal coding error that caused the child-rearing subsidy to be carried forward on Department records as a foster care payment. Furthermore, there is no suggestion in the record that Appellant knew or should have known of the quirk of law by which her household—with the same number of mouths to feed before and after the adoption—became disqualified from receiving food stamps as the result of Appellant's formal adoption of her grandchildren.

{4} The Department maintains that, as a delegatee of federal authority, its hands are tied by federal law requiring recovery of overpayments even where the overpayment was caused solely by agency error and without fault on the part of the food stamp recipient. A careful examination of the relevant statutes, regulations, and interpretative statements indicates that the Department's position is based on an unduly harsh interpretation of federal law.

{5} 7 U.S.C.A. § 2022(a)(1) (2002) provides that:

the Secretary [of Agriculture] shall have the power to determine the amount of and *settle and adjust any claim and to compromise ... all or part of any such claim or claims arising under the provisions of this chapter or the regulations issued pursuant to this chapter, including ... claims arising from ... nonfraudulent overissuances to recipients, including the power to waive claims if the Secretary determines that to do so would serve the purposes of this chapter. Such powers with respect to claims against recipients may be delegated by the Secretary to State agencies.*

(Emphasis added). We emphasize two points about this statute. First, claims arising from nonfraudulent overissuances—the type of claim at issue in the present case—are subject to the Secretary's power to compromise. Second, the power to compromise all or any part of a claim includes the power to waive a claim. Pursuant to 7 C.F.R. § 271.4(b) (2008), the Secretary of Agriculture has delegated to state agencies the authority "subject to the standards in [7 C.F.R.] § 273.18 [2008] ... to ... settle, adjust [or] compromise ... any claim which results from ... nonfraudulent overissuances to participating households." The Secretary's delegation of the more general power to compromise claims necessarily extends to a delegation of the included power to waive claims.

{6} In the course of our research, we came upon an interpretive statement by the Food and Nutrition Service of the United States Department of Agriculture that was published in the Federal Register along with the July 2000 revisions to the federal regulations governing claims collections:

> We received four comments recommending that we establish a policy similar to SSI for waiving [Agency Error] claims. In SSI, a claim may be waived if:
>
> (a) The overpaid individual was without fault in connection with the overpayment, and
>
> (b) Adjustment or recovery of the overpayment would either:
>
> (1) Defeat the purpose of the SSI program, or
>
> (2) Be against equity and good conscience, or
>
> (3) Impede efficient or effective administration of the SSI program due to the small amount involved.
>
> The commenters are particularly interested in waiving [Agency Error] claims that fit criteria (b)(1) and (b)(2) above. We recognize that this recommendation does have some merit. However, *we believe that State agencies already have similar authority.* State agencies are currently authorized to compromise claims when households are unable to pay because of hardship of similar reasons. Therefore,

we do not believe that this change is necessary.

Food Stamp Program: Recipient Claim Establishment and Collection Standards, 65 Fed.Reg. 41, 752, 41, 765 (July 6, 2000) (revising 7 C.F.R. Parts 272 and 273) (emphasis added). An agency's response to public comments on a proposed regulation is part of the legislative history of the regulation, and "while not conclusive, gives insight into the intent of the drafters." *Kelly v. Keystone Shipping Co.,* 281 F.Supp.2d 313, 324 (D.Mass.2003). The emphasized language indicates that the drafters of the federal regulations governing collection of overpayments understood and intended that state agencies administering food stamp programs have the authority to forego collection of claims resulting from agency error. Federal regulations specifically authorize a state agency to "compromise a claim or any portion of a claim if it can be reasonably determined that a household's economic circumstances dictate that the claim will not be paid in three years." 7 C.F.R. § 273.18(e)(7).

{7} The purpose of federally funded food stamp programs is to "provide an eligible household 'an opportunity to obtain a nutritionally adequate diet,'" *Knebel v. Hein,* 429 U.S. 288, 292, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977) (citation omitted); "to ensure that every citizen of this nation receives sufficient nutrition to enjoy a healthy existence," *United States v. Hassan,* 211 F.3d 380, 384 (7th Cir.2000); and "to provide assistance to individuals with limited incomes and resources to ensure that their basic nutritional needs will be met," *Hilliards v. Jackson,* 28 Va.App. 475, 506 S.E.2d 547, 550 (1998). As a federal district court has observed, "[r]ealistically, recoupment of overpayment does not 'even things out,' because, when food stamps are intended to provide marginally adequate coverage, a temporary reduction, even for 'recoupment,' is a reduction below the marginally adequate level." *Bliek v. Palmer,* 916 F.Supp. 1475, 1488 n. 10 (N.D.Iowa 1996) (concluding that due process required Iowa Department of Human Services to notify food stamp recipients of the state's authority to compromise claim for overpayment). There is an obvious tension between the pur-

pose of the food stamp program and the very concept of recovering overpayments from a household that entirely depends upon governmental subsidies for the bare necessities of life. The tension is heightened, where as here, the overpayment is the result of the agency's own error.

■ {8} In the present case, there is no indication in the administrative record that the Department exercised its discretion to compromise the claim for overpayment. A failure to exercise discretion conferred by law is, of itself, an abuse of discretion. *See Sandoval v. Chrysler Corp.*, 1998–NMCA–085, ¶ 12, 125 N.M. 292, 960 P.2d 834 (discussing trial court's failure to rule on the defendant's motion for remittitur; holding that the trial judge's failure to exercise his discretion was, in itself, reversible error). To the extent the Department failed even to consider a compromise or waiver, the Department acted "arbitrarily or capriciously" and "not ... in accordance with law." NMSA 1978, § 39–3–1.1(D)(1), (3) (1999).

{9} We are reluctant to consider engrafting equitable doctrines such as equitable estoppel onto an administrative scheme when it appears that, properly interpreted, the governing statutes and regulations provide an adequate remedy at law. In view of our conclusion that the Department has authority under federal law to compromise all or part of the claim against Appellant, we think that it is premature to reach the extremely difficult questions [1] presented by the application of equitable estoppel to the federally created, but locally administered, food stamp program. Section 39–3–1.1(H)(2) (defining "final decision" as "an agency ruling that as a practical matter resolves all issues arising from a dispute within the jurisdiction of the agency, once all administrative remedies available within the agency have been exhausted"). We vacate the judgment of the district court with instructions to remand this matter to the Department to reopen the fair hearing so that the Department may exercise the discretion conferred by federal law to settle, adjust, or compromise the over-

payment claim. Appellant shall have thirty days from the date that Appellant receives written notice of the Department's amended final decision to move the district court for reinstatement of her appeal. NMSA 1978, § 27–3–4 (1999).

{10} **IT IS SO ORDERED.**

I CONCUR: RODERICK T. KENNEDY, Judge.

JONATHAN B. SUTIN, Chief Judge (dissenting).

SUTIN, Chief Judge (dissenting).

{11} I respectfully dissent.

### The Sole Issues on Appeal

{12} The only issues before the Human Services Department, the district court, and this Court have been and are whether the doctrine of equitable estoppel can be asserted as a defense to bar enforcement of a food stamp overissuance claim and, if so, whether the recipient established the defense.

{13} Following a fair hearing and a recommended decision of an administrative law judge in favor of the Department, the Department determined that there was a food stamp overissuance and denied the application of the doctrine of equitable estoppel on the ground that "[f]ederal law permits no exception for equitable estoppel in the case of a food stamp overissuance caused by administrative error." The recipient, Ms. Waters–Haskins, appealed to the district court.

{14} In the district court, the recipient acknowledged that the Department had a right to establish the claim under the regulations and asserted that the essence of the case was whether the doctrine of equitable estoppel could be applied as a defense to the claim. The district court affirmed the Department's decision on the claim, ruling that the Department properly established the claim. The court also ruled that equitable estoppel did not apply to a food stamp overissuance case. The court further stated that even if equitable estoppel could apply, it did

---

1. *Vang v. Saenz*, No. C016270, 2002 WL 434733 (Cal.Ct.App. Mar.20, 2002) (unpublished), illustrates the complexity of the issues that are in-

volved in deciding whether to apply equitable estoppel to preclude a local agency from recovering food stamp overpayments.

not apply in the case at hand because the Department did not engage in a shocking degree of aggravated and overreaching conduct.

{15} In this Court, the two points the recipient raises for reversal pertain solely to equitable estoppel: (1) the New Mexico doctrine of equitable estoppel is not precluded by federal food stamp overissuance law, and (2) the elements of equitable estoppel were met in this case. The recipient asks this Court to declare that the doctrine of equitable estoppel may be applied as a defense to a food stamp overissuance claim. Further, the recipient asks this Court to reverse the decisions of the Department and the district court and order the removal and dissolution of any overissuance claims made or that the Department anticipates making.

## The Majority Opinion Raises Solely New, Different Issues

{16} The majority sets out portions of federal law and also sets out a federal agency interpretative statement. Majority Opinion, ¶¶ 5–6 (setting out portions of 7 U.S.C. § 2022(a)(1) (2002), 7 C.F.R. §§ 271.4(b) and 273.18(e)(7) (2008), and 65 Fed.Reg. 41,752, 41,765 (July 6, 2000)). The majority interprets these federal provisions to require the Department to exercise its discretion to compromise. Majority Opinion, ¶ 8. The majority also interprets these federal provisions to require the Department to exercise its discretion to consider waiver, based on yet another interpretation of federal law that the authority to compromise a claim includes the authority to waive a claim. Majority Opinion, ¶¶ 5, 8. The majority's interpretation of federal law and interpretative statement are unsupported by any case law. In addition, neither at the Department level, in the district court, nor in this Court were the meaning or application of any of these laws or the interpretative statement cited in any way or for any purpose even remotely related to the new issues on which the majority rests its analyses and holding in the present case.

{17} Further, in interpreting and analyzing the various provisions of federal law, the majority creates the notion of an inherent "tension" between a beneficial purpose of assisting people, on the one hand, with an onerous and unfair purpose of collecting overissuances, on the other hand. Majority Opinion, ¶ 7. The one case cited by the majority relating specifically to such a tension is shown to have held nothing more than that the state agency was required to notify food stamp recipients of the agency's authority to compromise a claim for overissuance of food stamps. Majority Opinion, ¶ 7. In search for a remedy for the issue it created and decided of the Department's abuse of discretion in failing to exercise its discretion to compromise or waive the claim, the majority concludes that the Department's exercise of discretion to compromise or waive is an adequate remedy at law and, therefore, the Department must exercise such discretion before any determination can be made as to whether the Department properly established a claim. Majority Opinion, ¶¶ 8–9.

{18} The district court mentioned the question of a payment schedule, and the Department explained that it had "the ability to compromise a claim if it cannot be paid within three years." The recipient said nothing about it. The parties did not raise, the district court did not address, and on appeal in this Court the parties did not raise anything about a duty to exercise discretion to compromise or waive a claim, a breach of any such duty or an abuse of any such discretion, exhaustion of administrative remedies, having to reach legal issues before equitable ones where there is an adequate remedy at law, or postponement of a decision on equitable estoppel to first address the question of compromise.

{19} Near the close of the Department's answer brief, the Department did state that it would "work with [the recipient] to develop a reasonable payment schedule," citing 8.139.640.12(B)(2)(c) NMAC, and stated further that if the claim could not be liquidated within three years "the Restitution Bureau can compromise the claim to an amount that will allow the household to make restitution within three years," citing 8.139.640.10(D)(1) NMAC. It is unclear for what purpose the Department made these statements. However, the recipient did not respond to these statements in her reply brief. The majority

does not rely on these statements in raising and addressing the new issues. In my view, these statements do not give any foot in the door to raise and decide new issues.

## Discussion

{20} I have several issues with the majority opinion.

{21} First and foremost, the majority opinion goes completely outside the issues that were raised, argued, and decided at the Department and district court levels. The Department is given no opportunity to respond to the new issues raised and addressed by the majority. It is not this Court's prerogative in this case to sua sponte raise and address new issues, decide what federal law says in regard to those issues, and then, as the majority does, vacate the final order of the district court and remand back to the Department with instructions that the Department follow our interpretation of federal law and engage in the process of compromise. *See* Majority Opinion, ¶ 9.

{22} Second, I am not persuaded that the majority's approach to resolving the limited issues before this Court is proper. The majority leaves open the question whether a claim was properly established, and it does so because it leaves open the question whether the doctrine of equitable estoppel can apply, and it does that because it determines that the issue of compromise and apparently that of waiver [1] must first be determined. It seems to me that the proper approach is the one taken in this case by the parties and the district court. I can understand the majority's desire to avoid having to tackle the difficult question of the application of the doctrine of equitable estoppel. However, I am not persuaded that the issue of compromise must or should be decided before or even together with the question whether a claim can be established—a question that necessarily requires a determination whether equitable estoppel is applicable. Nor am I persuaded by the majority's view that the law does not permit "engrafting . . . equitable estoppel onto an administrative scheme when it appears that, properly interpreted, the

governing statutes and regulations provide an adequate remedy at law." Majority Opinion, ¶ 9. And I am not persuaded that the majority is correct in its view that the provisions of the law related to compromise provide an adequate remedy at law under the circumstances of this case.

{23} Third, the recipient contested the claim only on the ground that the claim could not prevail because equitable estoppel precluded it. Further, there exists no question that the overissuance resulted from a Department administrative error. The Department acknowledged that in its hearing decision. Yet the opinion unnecessarily discusses facts and law apparently for the purpose of indicating its dissatisfaction with, if not hostility to, the Department's enforcement of the food stamp overissuance law, the Department's right to establish the overissuance claim even were equitable estoppel not applicable, and what it views as the Department's incorrect interpretation of the law to permit it to establish a claim without first compromising it. *See* Majority Opinion, ¶¶ 3–4. I have difficulty finding a rational or legal basis for the majority's views. The majority cites no case law that supports its analyses and interpretations of federal law as to duty to exercise discretion, breach of such duty, and abuse of such discretion.

{24} Also, the majority cites case law on the purpose of the food stamp program and then states its view that there exists an "obvious tension between the purpose of the food stamp program and the very concept of recovering overpayments from a household that entirely depends upon governmental subsidies for the bare necessities of life." Majority Opinion, ¶ 7. This further demonstrates the majority's distaste for the federal food stamp law, but the majority does not assist in resolving the issues that were before the district court and are before this Court. Furthermore, there does not appear to be a tension between the purpose of the program and the Department having a right to establish a claim for overissuance where, under the laws and regulations, establishing a claim for overissuance is part and parcel of the

---

1. I include waiver with compromise because the majority opinion appears to hold that the Department had a duty to exercise discretion in regard to both compromise and waiver.

program, and the program makes allowance for circumstances in which compromise is appropriate.

{25} For the foregoing reasons, I respectfully dissent.