# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-031

Filing Date: June 8, 2009

Docket No. 31,300

HAZEL WATERS-HASKINS,

> Petitioner-Respondent and
> Cross-Petitioner,

v.

NEW MEXICO HUMAN SERVICES
DEPARTMENT, INCOME SUPPORT DIVISION,
and PAMELA HYDE, Secretary,

> Respondents-Petitioners and
> Cross-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
James A. Hall, District Judge

Susan M. Sita
Special Assistant Attorney General
Office of General Counsel
New Mexico Human Services Department
Santa Fe, NM

for Petitioners

Joel R. Jasperse
New Mexico Legal Aid
Gallup, NM

Marcia J. Lieberman
New Mexico Legal Aid
Albuquerque, NM

for Respondent

## OPINION

**MAES, Justice.**

**{1}**     An administrative decision by the New Mexico Human Services Department (the Department) established a claim against Hazel Waters-Haskins (Appellant) for the repayment of food stamp benefits erroneously issued to her.  The administrative law judge rejected Appellant's argument that the doctrine of equitable estoppel should bar the

1

Department's claim because the Department's error caused the overpayment. On appeal, the district court upheld the administrative decision. Appellant then sought review from the Court of Appeals on a petition for writ of certiorari. In a split decision, the Court of Appeals reversed the district court "on the ground that it is premature to address equitable defenses because the Department has not yet exercised its authority under federal law to settle, adjust, or compromise the overpayment claim." *Waters-Haskins v. N.M. Human Servs. Dep't*, 2008-NMCA-127, ¶ 1, 144 N.M. 853, 192 P.3d 1230. On a petition for writ of certiorari from the Department and a cross-petition from Appellant, we reverse the judgment of the Court of Appeals and hold that the doctrine of equitable estoppel bars the Department's overpayment claim.[1]

## Background

**{2}** The parties do not dispute the facts found by the administrative law judge. Appellant was a foster parent to her grandchildren until she adopted them on November 24, 1997. Appellant received a foster parent subsidy before the adoption and an adoptive parent subsidy after the adoption from the New Mexico Children, Youth and Families Department (CYFD). Both before and after the adoption, Appellant also received food stamp assistance. In her applications for assistance, Appellant correctly reported the subsidies and the change in the status of the subsidies following the adoption.

**{3}** The Department properly had excluded Appellant's foster parent subsidy from her income for the purpose of calculating her eligibility for food stamp assistance. *See* 8.139.400.10(D) NMAC (5/15/2001); 8.139.520.8(E)(3) NMAC (5/15/2001). Following the adoption, the Department should have included the adoptive parent subsidy in Appellant's income, which would have made her ineligible for benefits. However, the Department continued to exclude the adoptive parent subsidy from Appellant's income. Due to this error, Appellant unwittingly received food stamp benefits to which she was not entitled.

**{4}** The error was discovered in December 2004. Following the revelation of its error, the Department recalculated Appellant's food stamp allotment for an eleven-month period, between February 2004 and January 2005 (the claim period), during which Appellant received $4,476 in food stamp assistance. The Department determined that Appellant had a monthly net income of $1446—including income from Social Security Disability, Supplemental Security Income, and the monthly adoption subsidy—that disqualified her from receiving food stamp assistance during the claim period. The Department then sent a notification letter to Appellant asserting an overpayment claim in the amount of $4,476.

## Administrative Opinion

**{5}** Appellant requested and received an administrative fair hearing to determine whether the Department could establish an overpayment claim against Appellant. Appellant argued that the doctrine of equitable estoppel should prevent the Department from pursuing the overpayment claim, because Appellant properly had reported her income, the overpayment was due to the Department's error, Appellant reasonably relied on the Department to calculate her food stamp allotment accurately, and collection of the overpayment debt would cause Appellant's family extreme hardship. The administrative law judge found in the

---

[1]For the purposes of this Opinion, we use the terms "overpayment" and "overissuance" interchangeably throughout.

Department's favor and issued a recommendation to the Director of the Income Support Division that she should issue a final ruling establishing the Department's claim against Appellant. The Director adopted the judge's recommendation and entered the following order:

> Issue 1- Initiation of a FSP overissuance claim
>
> The department correctly established an overissuance claim against the food stamp benefits issued to Ms. Waters-Haskins for the months of February 2004 through January 2005. There is no dispute that the claim is a result of department error.
>
> Program policy at 8.139.640.11(B) NMAC requires the department to take action to establish a claim against any household that received more food stamp benefits than it was entitled to receive whether or not the overissuance occurred because of a household or an administrative error. The failure to include the income Ms. Waters-Haskins receives from adoption subsidy was clearly an administrative error. However, policy requires the department to establish the claim.
>
> Issue 2 - Equitable estoppel
>
> The FSP is a federally funded program therefore the department is bound by federal law in administering the program. Federal law permits no exception for equitable estoppel in the case of a food stamp overissuance caused by administrative error therefore the department is prevented from applying this principle [to] Ms. Waters-Haskins' claim.

On appeal, the district court affirmed the order.

**Court of Appeals' Opinion**

**{6}** In a split decision, the Court of Appeals remanded this case to the administrative hearing judge. The majority held that Appellant has an adequate remedy at law, because the Department may choose to compromise the overpayment claim. *Waters-Haskins*, 2008-NMCA-127, ¶ 9. As the majority interpreted the Department's regulations, a compromise would resolve the issues of this dispute, making a determination on the more complicated equitable estoppel question unnecessary. *Id.* Therefore, the majority held that deciding the equitable estoppel claim was premature and "vacat[ed] the judgment of the district court with instructions to remand this matter to the Department to reopen the fair hearing so that the Department may exercise the discretion conferred by federal law to settle, adjust, or compromise the overpayment claim." *Id.* If the Department does not compromise the claim after remand, the majority reasoned, then Appellant may reinstate her appeal. *Id.*

**{7}** Judge Sutin dissented, arguing that "[t]he only issues before the Human Services Department, the district court, and [the Court of Appeals] have been and are whether the doctrine of equitable estoppel can be asserted as a defense to bar enforcement of a food stamp overissuance claim and, if so, whether the recipient established the defense." *Id.* ¶ 12. Judge Sutin further challenged the majority's interpretation of federal regulations, which would *require* the Department to exercise its discretion to compromise overpayment claims. *Id.* ¶ 16. Judge Sutin argued that the Department has the right to establish a claim for

3

overissuance and the discretion to compromise the claim, but that the threshold question to the exercise of that discretion is whether the Department has established a proper claim. *Id.* ¶¶ 22-24. Therefore, according to the dissent, the majority should have reached the equitable estoppel question and decided whether the doctrine should bar the establishment of the Department's claim. *Id.* ¶ 22.

{8}     We granted the Department's petition for certiorari and Appellant's conditional cross-petition. The parties' petitions raise three issues: (1) whether the Court of Appeals erred by holding that a determination on Appellant's equitable estoppel defense is premature; (2) whether the doctrine of equitable estoppel applies to a food stamp overpayment claims generally; and (3) whether the doctrine of equitable estoppel should act as a bar to the Department's overpayment claim against Appellant.

## DISCUSSION

### I. Whether the Court of Appeals erred by holding that a determination on Appellant's equitable estoppel defense is premature.

{9}     We address this issue with a review of the procedures for establishing an overpayment claim. The federal Food Stamp Program[2] aims to increase the monthly budget for food and nutrition for qualifying low-income households. 7 U.S.C. § 2011 (2006). Benefit recipients can exchange food stamps at authorized stores for food items, and plants and seeds used to grow food. 7 C.F.R. 271.2 (2009) (defining "eligible foods"). The federal government pays for the benefits, while state agencies, like the Department, administer the program and pay the costs of distributing the benefits. *See* 7 U.S.C. § 2020 (2006); 7 C.F.R. § 273.18(a)(2)-(3) (2009). Federal statutes and regulations define the extent of a state agency's authority to administer the program and outline the procedure for pursuing overpayment claims.

{10}     Prior to seeking to establish a claim, a state agency must first determine whether pursuing a claim is cost effective, and "[a] State agency may opt not to establish and subsequently collect an overpayment that is not cost effective." 7 C.F.R. 273.18(e)(2) ("Pre-establishment cost effectiveness determination."). Agencies independently may determine whether a claim is cost effective by adopting their own regulations, or if the agency has not adopted its own regulations it can rely on federal regulations, under which a claim of $125 or less is not cost effective. 7 C.F.R. § 273.18(e)(2)(ii). The Department follows the federal guidelines because it does not have its own procedures in this area. *See* 8.139.640 NMAC (5/15/2001, as amended through 2/23/2007) (lacking state regulations on the cost effectiveness of pursuing claims).

{11}     After determining whether a potential claim is cost effective, the agency must then provide the recipient with written notification of the potential claim and the recipient's opportunity to request a fair hearing. 7 C.F.R. 273.18(e)(3)(iii). Unless the recipient requests a fair hearing, "[t]he claim will be considered established for tracking purposes as of the date of the initial demand letter or written notification." *Id.* If, however, the recipient requests a fair hearing, an administrative law judge will determine whether the agency can establish the overpayment claim. The only issue at the fair hearing is whether a claim exists:

---

[2]The program was renamed the Supplemental Nutrition Assistance Program as of October 1, 2008, but for purposes of consistency we refer to it herein as the Food Stamp Program.

(ii)     If the hearing official determines that a claim does, in fact, exist against the household, the household must be re-notified of the claim. The language to be used in this notice is left up to the State agency.  The demand for payment may be combined with the notice of the hearing decision. Delinquency must be based on the due date of this subsequent notice and not on the initial pre-hearing demand letter sent to the household.

(iii)     If the hearing official determines that a claim does not exist, the claim is disposed of in accordance with paragraph (e)(8) of this section.

7 C.F.R. 273.18(e)(6).

**{12}**     If the fair hearing establishes the claim, then the state agency may consider whether to compromise the claim.  7 C.F.R. 273.18(e)(7).  The agency "may compromise a claim or any portion of a claim if it can be reasonably determined that a household's economic circumstances dictate that the claim will not be paid in three years."   7 C.F.R. 273.18(e)(7)(i).  The Department's regulations state, "[i]f the full or remaining amount of a claim cannot be liquidated in three years, the restitution bureau may compromise the claim by reducing it to an amount that will allow the household to make restitution within three years."   8.139.640.10(D)(1) NMAC.   Whether the agency compromises a claim is discretionary, and once a claim has been reduced through a compromise, the state agency "may reinstate any compromised portion of a claim if the claim becomes delinquent."  7 C.F.R. 273.18(e)(7)(iii).  Therefore, it is necessary that the agency establish a claim for the full amount of the overpayment before the compromise, because the agency must protect its right to pursue repayment beyond the compromised amount if the repayment becomes delinquent.

**{13}**     This structure requires that a state agency first establish a valid claim in the full amount of the overpayment, either by the notification letter or by a fair hearing, before the agency can decide whether to compromise the claim.  The Court of Appeal's conclusion is problematic because it places the compromise before a final ruling on the establishment of the claim.  By remanding with instructions that the Department consider compromising the claim, the Court of Appeals' opinion effectively requires Appellant to acquiesce to the overpayment claim in the full amount, and thus, forecloses a ruling on the issue appealed. This result would become particularly problematic if Appellant became unable to pay according to the terms of the compromise.  If Appellant became delinquent on her payments, the Department could reinstate the original claim and hold her liable for the full amount. Appellant would then be unable to challenge the establishment of the claim, having never received full consideration of her defense of equitable estoppel.

**{14}**     Accordingly, we undertake a review of Appellant's equitable estoppel defense to the establishment of the Department's claim.   Before we can determine whether the Department's claim is barred based on the particular facts of this case, we must determine whether the doctrine of equitable estoppel is an available defense to food stamp overpayment claims generally.  This is an issue of first impression in New Mexico.

**II. Whether the doctrine of equitable estoppel can apply to food stamp overissuance cases generally.**

**{15}**     "[E]stoppel is the preclusion, by acts or conduct, from asserting a right which might otherwise have existed, to the detriment and prejudice of another, who, in reliance on such

acts and conduct, has acted thereon." *Brown v. Taylor*, 120 N.M. 302, 305, 901 P.2d 720, 723 (1995) (internal quotation marks and citations omitted). In the present case, Appellant asks us to apply the doctrine to bar the legal claim of the Department based on the Department's conduct and Appellant's reasonable reliance on that conduct.

**{16}** We generally disfavor applying the doctrine of equitable estoppel against the State. The doctrine is "rarely applied against the State and then only in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it." *Wisznia v. State Human Servs. Dep't*, 1998-NMSC-011, ¶ 17, 125 N.M. 140, 958 P.2d 98; *see e.g.*, *Lopez v. State*, 1996-NMSC-071, ¶ 20, 122 N.M. 611, 930 P.2d 146; *Nat'l Adver. Co. v. State ex rel. State Highway Comm'n*, 91 N.M. 191, 193, 571 P.2d 1194, 1196 (1977); *Ross v. Daniel*, 53 N.M. 70, 75, 201 P.2d 993, 996 (1949).

**{17}** With respect to New Mexico state agencies in particular, the doctrine only is available to bar those rights or actions over which an agency has discretionary authority. "Estoppel cannot lie against the state when the act sought would be contrary to the requirements expressed by statute," *Kilmer v. Goodwin*, 2004-NMCA-122, ¶ 26, 136 N.M. 440, 99 P.3d 690, and therefore, we will not entertain an equitable estoppel defense that would prevent an agency from discharging its statutory duties, *see, e.g.*, *Rainaldi v. Pub. Employees Ret. Bd.*, 115 N.M. 650, 658-59, 857 P.2d 761, 769-70 (1993). *See also Del Gallo v. Sec. of Commonwealth.*, 816 N.E.2d 108, 111 (Mass. 2004) ("Generally, the doctrine of estoppel is not applied against the government in the exercise of its public duties, or against the enforcement of a statute." (internal quotation marks and citations omitted)); *Senior Citizens Coalition of Ne. Minn. v. Minn. Pub. Utils. Comm'n*, 355 N.W.2d 295, 304 (Minn. 1984) ("Where an agency has no authority to act, agency action cannot be made effective by estoppel."); *Schorr v. N.Y. City Dep't of Hous. Pres. and Dev.*, 886 N.E.2d 762, 764 (N.Y. 2008) ("It is well settled that estoppel cannot be invoked against a governmental agency to prevent it from discharging its statutory duties." (internal quotation marks and citations omitted)). Therefore, we must determine the degree to which an agency is acting under its own discretionary authority to determine whether the doctrine can bar the agency's action. *See, e.g.*, *People v. Gustafson*, 127 P.2d 627, 634 (Cal. Dist. Ct. App. 1942) ("A state, as well as an individual, . . . may be estopped by the acts of its public officials done in the exercise of powers expressly conferred by law, and by their acts or omissions when acting within the scope of their authority."); *Kimberly-Clark Corp. v. Dubno*, 527 A.2d 679, 684 (Conn. 1987) (holding that estoppel may be invoked only when the action in question has been induced by an agent having authority in such matters).

**{18}** The Department argues that federal regulations mandate that the Department pursue collection of any overpayment, and therefore, the Department has no discretion in its policies for establishing overpayment claims. Since equitable estoppel cannot bar a state agency from executing its statutory duties, the Department argues that the doctrine cannot apply to bar any food stamp overpayment claims. The Department's argument requires us to review the federal regulations that define the extent of the Department's discretionary authority to administer the food stamp program.

**{19}** The Secretary of the United States Department of Agriculture (USDA) has delegated to state agencies "the authority to determine the amount of, and settle, adjust, compromise or deny all or part of any claim which results from fraudulent or nonfraudulent overissuances to participating households." 7 C.F.R. § 271.4(b) (2009). In 2000, the USDA promulgated new rules concerning food stamp claims that rewrote the long-standing claims regulations for state agencies. *See* David A. Super, *Encouraging Moderation in State Policies on*

6

*Collecting Food Stamp Claims*, Clearinghouse Review Vol. 39, No. 5/6, 349 (September 2005) [hereinafter *Encouraging Moderation*]; Food Stamp Program: Recipient Claim Establishment and Collection Standards, 65 Fed. Reg. 41,752, 41,753 (July 6, 2000).[3] These rules built upon "vastly expanded state discretion in the Food Stamp Program" through the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105 (1996). *See* David A. Super, *The Quiet "Welfare" Revolution: Resurrecting the Food Stamp Program in the Wake of the 1996 Welfare Law*, 79 N.Y.U. L. Rev. 1271, 1307-08 (2004) ("This, and the rest of the upheavals of 1996, persuaded states that power had shifted decisively in their direction; they became intolerant of federal policies limiting their authority even in areas long recognized as being within [the Food and Nutrition Services'] authority."). Under these rules, each state is expected to develop and implement an efficient process for detecting and disposing of overpayment claims, but the content of that process is largely left up to the states themselves, with overarching federal regulations intended to guide the states' administration. 65 Fed. Reg. at 41,753-54 ("A strict application of the standard federal collection rules is not the best solution for recipient claim debt management. . . . [W]e must accommodate State agencies in their efforts to operate their respective claims operations as efficiently as possible. . . . To accomplish this, we need to afford State agencies a certain degree of flexibility while maintaining enough control to ensure effective claims management."). For example, the states may establish independent thresholds for determining the cost-effectiveness of establishing a claim. 7 C.F.R. § 273.18(e)(2); *see, e.g.*, *Encouraging Moderation*, *supra*, at 351 ("Maine does not establish claims under $200 against participating households. Connecticut does not establish claims under $500 against nonparticipating households. And New York City applies a $500 cost-effectiveness standard in establishing claims against both participating and nonparticipating households."). The purpose of this broad delegation of authority is to "ensure efficient and effective claims referral management while maximizing State agency flexibility." 65 Fed. Reg. at 41,758.

**{20}** Though state agencies do not have the authority to simply ignore claims resulting from agency error, the USDA has delegated to the states the authority to compromise or waive claims in consideration of the detrimental impact of collecting claims would have on certain households. *See* 7 U.S.C. § 2022(a)(1) (2006); 7 C.F.R. §§ 271.3, 271.4(b). The USDA discussed specifically this authority in the rules regarding overpayment claims

---

[3]65 Fed. Reg. at 41753-54 reads:

> Although State agencies administer the FSP and collect overpayments, these benefits are federally funded and claims established from overpayments are Federal debts. This unique arrangement is the reason why we need extensive regulations in this area. A strict application of the standard federal collection rules is not the best solution for recipient claim debt management. The reason for this is two-fold. First, the Food Stamp Act of 1977, 7 U.S.C. 2011-2032, (FSA), which governs the FSP, contains certain collection provisions and household protections that are not included in other Federal laws. Second, we must accommodate State agencies in their efforts to operate their respective claims operations as efficiently as possible. A State agency usually tries to integrate its food stamp recipient claims process with claims operations for similar programs such as Temporary Assistance for Needy Families (TANF). To accomplish this, we need to afford State agencies a certain degree of flexibility while maintaining enough control to ensure effective claims management.

collection. In the preamble, the USDA addresses comments suggesting that the administration should adopt rules similar to those permitting waiver of Social Security Income (SSI) overpayments:

> We received four comments recommending that we establish a policy similar to SSI for waiving [Administrative Error] claims. In SSI, a claim may be waived if:
> (a) The overpaid individual was without fault in connection with the overpayment, and
> (b) Adjustment or recovery of the overpayment would either:
> (1) Defeat the purpose of the SSI program, or
> (2) Be against equity and good conscience, or
> (3) Impede efficient or effective administration of the SSI program due to the small amount involved.
> The commenters are particularly interested in waiving [Administrative Error] claims that fit criteria (b)(1) and (b)(2) above. We recognize that this recommendation does have some merit. *However, we believe that State agencies already have similar authority. State agencies are currently authorized to compromise claims when households are unable to pay because of hardship or similar reasons.* Therefore, we do not believe that this change is necessary.

65 Fed. Reg. at 41,765 (emphasis added). Therefore, state agencies have broad authority to establish and collect overpayment claims, and the creation of the policies to meet those ends are a discretionary exercise within the scope of that authority.

**{21}** Because the Department has this broad authority, the Department's conduct and a recipient's reliance on that conduct may estop the Department from establishing a claim where equity requires it. Therefore, the doctrine of equitable estoppel is a valid defense to the Department's overpayment claim. We note, however, that equitable estoppel is a limited doctrine—limited more so when sought against a governmental entity—and it will not bar all overpayment claims. Whether the doctrine will act as a bar to a specific claim requires an analysis of the peculiar facts of each case.

### III. Whether the doctrine of equitable estoppel bars the Department's claim.

**{22}** There are six basic elements of equitable estoppel that we use to determine whether the doctrine will bar claims of a state agency. *Westerman v. City of Carlsbad*, 55 N.M. 550, 555-56, 237 P.2d 356, 359 (1951). The essential elements that apply to the state agency to be estopped are (1) the agency's conduct amounting to a false representation or concealment of material facts or, at least, that is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the agency's intention, or at least expectation, that the other party will act upon such conduct; and (3) the agency's knowledge, actual or constructive, of the real facts. *See Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 24 n.5, 132 N.M. 207, 46 P.3d 668; *Westerman*, 55 N.M. at 555-56, 237 P.2d at 358-59. The essential elements that apply to the party raising equitable estoppel as a defense are "(1) [l]ack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Westerman*, 55 N.M. at 555-56, 237 P.2d at 359 (internal quotation marks and citation omitted); *see Gallegos*, 2002-NMSC-012, ¶ 24 n.5*; Mayfield Smithson Enters.*

8

*v. Com-Quip, Inc.*, 120 N.M. 9, 12, 896 P.2d 1156, 1159 (1995). To apply the doctrine against a state agency, we must find each of these basic elements.

**{23}** Additionally, because "New Mexico courts have been reluctant to apply estoppel against the state and its agencies," *Lopez*, 1996-NMSC-071, ¶ 20, we will apply estoppel against the state only when the agency has engaged in a "shocking degree of aggravated and overreaching conduct," or when "right and justice demand" it. *See Nat'l Adver. Co.*, 91 N.M. at 194, 571 P.2d at 1197; *State ex rel. State Highway Dep't v. Yurcic*, 85 N.M. 220, 223, 511 P.2d 546, 549 (1973). Despite this reluctance, however, "estoppel against the State is a well-grounded doctrine in New Mexico." *Am. Legion Post No. 49 v. Hughes*, 120 N.M. 255, 260, 901 P.2d 186, 191 (Ct. App. 1994); *see also Green v. N.M. Human Servs. Dep't, Income Support Div.*, 107 N.M. 628, 629, 762 P.2d 915, 916 (Ct. App. 1988) ("However, equitable estoppel will be applied against the state where right and justice demand it.").

**{24}** In the present case, the Department's relative knowledge and conduct satisfy the basic elements of estoppel. Departmental conduct may amount to a false representation or concealment of material facts where it makes "representations that are contrary to the essential facts to be relied on, even when made innocently or by mistake." *Green*, 107 N.M. at 629, 762 P.2d at 916. In the present case, there is no question that Appellant was ineligible for the overissued food stamps. However, contrary to this essential fact, the Department mistakenly conferred food stamp benefits to Appellant over an eight-year period. This prolonged misrepresentation is inconsistent with the Department now establishing a claim against Appellant. The Department operates with the expectation that an individual will rely on the Department's determination of eligibility where, as here, the individual has provided all the requisite information truthfully. Accordingly, we deem the Department knowledgeable of the actual fact that Appellant was ineligible for benefits.

**{25}** Similarly, Appellant's relative knowledge and conduct also satisfy the basic elements of estoppel. Unlike the Department, we cannot fairly conclude that Appellant knew or understood the regulations determining her eligibility for food stamp assistance. The process for applying for food stamps does not require any such particularized knowledge. The application for assistance advises applicants of their responsibility to report changes in their financial conditions and advises them against the use of fraud, but it does not require applicants to have an independent understanding of their eligibility for benefits. Therefore, Appellant had neither actual nor constructive knowledge that she was ineligible for food stamp assistance.

**{26}** Appellant also relied on the Department's representation that she was eligible for food stamps. Having no apparent change in her actual income following her grandchildren's adoption, Appellant presumably continued to include food stamp assistance in determining her household's monthly budget. In reliance on the Department's representations, Appellant received food stamps that her income should have prohibited, and in so doing she changed her position by organizing her finances according to her available budget with the food stamp assistance. This reliance was to her detriment, since she is potentially facing a federal debt as a result. Thus, the facts of this case satisfy all of the basic elements of equitable estoppel as related to Appellant.

**{27}** Having established the basic elements of estoppel, we must determine whether the Department engaged in a "shocking degree of aggravated and overreaching conduct," or whether "right and justice" demand the application of the doctrine in this case. The parties agree that the overpayment to Appellant was the result of the Department's error. The

9

Department argues that these errors, though unfortunately common, do not amount to the degree of aggravated or overreaching conduct contemplated by the doctrine. The Department is correct that departmental error alone does not warrant barring a state's food stamp overpayment claim. *See, e.g.*, *Carlson v. Ariz. Dep't of Econ. Sec.*, 906 P.2d 61, 65 (Ariz. Ct. App. 1995) (holding Departmental error resulting in overpayment was not estopped from requiring restitution, since inadvertent failure to adjust amount of food stamps due recipient was not so egregious as to constitute "wrongful conduct" by government agency); *Lewis v. State, Dep't of Health and Rehabilitative Servs.*, 659 So. 2d 1255, 1257 (Fla. Dist. Ct. App. 1995) (holding that there is no detrimental reliance where the only harm was the inability to retain money which never should have been received); *Turner v. Chandler*, 955 P.2d 1062, 1069 (Haw. Ct. App. 1998) (holding that equitable estoppel would not bar the state agency's claim because a six-month delay before correcting the state's error and a repayment burden on the recipient, who lives at or below the national poverty line, did not amount to manifest injustice); *Bliek v. Palmer*, 916 F. Supp. 1475, 1493 (N.D. Iowa 1996) (holding State officials were not equitably estopped from seeking to recover food stamp overpayments resulting solely from agency error because the doctrine requires proof not only of material misrepresentation, but affirmative misconduct, which was lacking).

**{28}**     The Department relies primarily on *Turner*, in which the Hawaii Court of Appeals declined to apply the doctrine of equitable estoppel to an overpayment claim. 955 P.2d at 1069. In that case, the state agency approved appellant's food stamp application based on the agency's erroneous documentation that children living with appellant were minors. *Id.* at 1063. Upon discovering the error, the department sought recoupment of $1,020. *Id.* The recipient asserted that equitable estoppel should bar the agency's claim. The Hawaii Court of Appeals held that, given the department's broad authority in handling claims, estoppel *could* apply to bar such a claim. *Id.* at 1064. However, the court held that there was not the requisite "manifest injustice" required to apply the doctrine against a governmental agency when the challenge to the claim was predicated solely on agency error. *Id.* at 1065.

**{29}**     We agree that agency error alone should not defeat a food stamp overpayment claim. However, the present case presents a rare combination of circumstances that compound the Department's error. One unique factor in this case is the length of delay between the initial occurrence and the discovery of the Department's error. Appellant received overpayment in food stamp benefits for approximately eight years. Though the Department is only seeking eleven months of overpayments, by failing to discover its error the Department increased Appellant's unwitting indebtedness each time it issued her food stamps and approved her requests for benefits. This conduct is further aggravated since there is the possibility that the Department may establish up to six years of overpayment claims depending on Appellant's, or other members of her household's, ability to pay. *See* 8.139.640 NMAC.

**{30}**     A federal debt on top of Appellant's current financial state is directly contrary to the purpose of the food stamp program. Considered alone, this fact would not lead us to conclude that we should estop the Department's claim. While generally it is true that any person qualifying for food stamp benefits would suffer hardship by the prospect of an overpayment debt, we distinguish the present case from that commonality, because Appellant does not presently qualify for benefits. The Department seeks to establish a claim for the repayment of $4,476 in food stamp benefits. If Appellant presently qualified for food stamp benefits, the overissuance repayment would take the form of a reduction in benefits. 7 U.S.C. § 2022(b). However, because Appellant is ineligible for benefits, the Department will collect the debt either by "withholding amounts from unemployment compensation from

10

a member of the household," or "recovering from Federal pay or a Federal income tax refund,"or "any other means." *Id.* Thus, Appellant received benefits in the form of food stamps, but she would have to satisfy the debt in cash. Food stamps are denominated in dollars, but they are not equivalent to cash. 7 U.S.C. § 2026(b)(1)(B)(iv)(I) (2006) (prohibiting payment of most benefits in the form of cash). The restricted use of food stamps gives them an intrinsic value that is less than their face value in cash. Therefore, Appellant's inability to repay the benefits with like-valued assets deepens the potential hardship to Appellant that this debt threatens.

**{31}** Appellant did not know and had no reason to know that she was ineligible for food stamp assistance. In this unique case, the only change in Appellant's condition was one of status rather than financial condition when she adopted her grandchildren. Taking advantage of the food stamp program does not require Appellant to understand the nuance of law that changed her food stamp eligibility when she became an adoptive parent rather than a foster parent, and there was no change in the benefits Appellant received to suggest that anything she received was undue. This is a rare case in which the recipient had no reasonably discernable indication that she was receiving an overissuance of food stamp benefits.

**{32}** Generally, no single factor named above would warrant barring the Department's claim under the doctrine of equitable estoppel. However, the combination of circumstances and the unique facts of this case make the application of the doctrine appropriate in this case for the satisfaction of "right and justice."

## CONCLUSION

**{33}** We agree with Judge Sutin that this appeal presents only the issue of whether the doctrine of equitable estoppel bars the Department's overpayment claim against Appellant. Moreover, we view the disposition of the Court of Appeals' opinion as potentially foreclosing Appellant's ability to challenge the Department's claim on appeal. Therefore, for the above stated reasons, we conclude that the doctrine of equitable estoppel bars the Department's claim against Appellant. Accordingly, we reverse the Court of Appeals, which remanded this case to the administrative law judge. We also reverse the district court judgment, which upheld the administrative decision establishing the overpayment claim against Appellant.

**{34}  IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____

11

**CHARLES W. DANIELS, Justice**

**Topic Index for** *Waters-Haskins v. NM Human Servs. Dep't*, **No. 31,300**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-DP | Delegation of Powers |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-EQ | Equitable Claims or Defenses |
| CP-ES | Estoppel |
| | |
| **FL** | **FEDERAL LAW** |
| FL-RE | Regulations |
| | |
| **GV** | **GOVERNMENT** |
| GV-PW | Public Health and Welfare |
| GV-RA | Regulatory Authority |
| GV-SA | State Agencies |
| | |
| **PA** | **PUBLIC ASSISTANCE** |
| PA-FS | Food Stamps |