COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and AtLee
Argued at Norfolk, Virginia

PUBLISHED

JOSHUA GAINES AND
  MAKIBA GAINES

                                                        OPINION BY
v.      Record No. 1090-19-1                  JUDGE ROBERT J. HUMPHREYS
                                                        JANUARY 7, 2020
DEPARTMENT OF HOUSING & COMMUNITY
  DEVELOPMENT STATE BUILDING CODE
  TECHNICAL REVIEW BOARD AND CITY OF NORFOLK

              FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                                James C. Lewis, Judge

          Makiba Gaines (The Gaines Law Firm, P.L.L.C., on briefs), for
          appellants.

          Elizabeth B. Myers, Assistant Attorney General (Mark R. Herring,
          Attorney General; Donald D. Anderson, Deputy Attorney General;
          Heather Hays Lockerman, Senior Assistant Attorney General &
          Section Chief; Justin I. Bell, Assistant Attorney General; Andrew
          Fox, Deputy City Attorney, on brief), for appellees.


        Joshua and Makiba Gaines ("the Gaineses") appeal an order entered by the Circuit Court

of the City of Virginia Beach ("circuit court"), upholding the State Building Code Technical

Review Board's ("Review Board") decision that the Virginia Maintenance Code ("VMC")

requires the installation of a heating system and that the lack of a heating system in the

Gaineses's rental property rendered the property unfit or unsafe for habitation. On appeal, the

Gaineses raise two assignments of error:

          I. The circuit court erred in concluding "the Review Board
             correctly interpreted sections 105, 202, 603.1, and 605.1 of the
             Virginia Maintenance Code."

II. The circuit court erred in affirming the City of Norfolk's citation of Appellants' property because Appellants are not required by the Virginia Maintenance Code to furnish a heating appliance to the property.

I. BACKGROUND

The Gaineses own a rental property located at 2410 West Avenue in the City of Norfolk. The property was constructed in 1965, prior to the adoption of the Uniform Statewide Building Code ("USBC"). On February 7, 2017, a code official for the City inspected the property and issued a notice of violation after determining that the property's defective heating facility violated Sections 603.1 and 605.1 of the VMC. On February 15, 2017, the City issued a second notice of violation, "identifying the property as unsafe or unfit for human habitation for the lack of a functioning heating system" and placarded the property. The tenants who lived at the property relocated sometime between the issuance of the first and second notices of violation. However, the Gaineses intended to lease the property to occupants in the future. In March 2017, the Gaineses obtained a permit from the City to install a gas space heater. The City inspected the property on March 20, 2017, but did not approve the installation due to the use of an unvented heater as the property's sole source of heat. The Gaineses then removed the defective heating system and have yet to install an operable heating system in the property.

The Gaineses appealed to the City of Norfolk Local Board of Building Code Appeals ("local appeals board"). After conducting a hearing on the merits of the appeal, the local appeals board denied the Gaineses's appeal. The Gaineses then appealed to the Review Board. On October 12, 2018, the Review Board entered an order upholding the City's decision to placard the property as uninhabitable, holding that "violations of Section[s] []603.1 and 605.1 of the VMC exist[] and that the installation of a heating system is required." Moreover, the Review Board agreed with the City that the property was "unfit" or "unsafe" according to Section 202 and that the City was obligated to placard the property, pursuant to Section 105.6, once it was

found unsafe or unfit. The Review Board also found that "the violations cannot be satisfied by the removal of the existing heating system and that a heating system is required to be in place according to the VMC."

The Gaineses appealed the Review Board's decision to the circuit court.[1] The circuit court entered an order on June 6, 2019, holding that the Review Board "correctly interpreted Sections 105, 202, 603.1, and 605.1" of the VMC. The circuit court affirmed the Review Board's finding that violations of the VMC existed "due to Appellants' removal of the property's heating facility and refusal to install a functioning heating facility in the property as required by the VMC." Accordingly, the circuit court affirmed the Review Board's decision.[2] This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"On appeal of agency action under the [Virginia Administrative Process Act ("VAPA")], the party complaining bears the 'burden of demonstrat[ing] an error . . . subject to review.'" Va. Bd. of Med. v. Hagmann, 67 Va. App. 488, 499 (2017) (alterations in original) (quoting Code § 2.2-4027). In a VAPA appeal, the circuit court functions as an appellate court, "equivalent to an appellate court's role in an appeal from a trial court." Comm'r v. Fulton, 55 Va. App. 69, 80 (2009) (quoting Sch. Bd. of York v. Nicely, 12 Va. App. 1051, 1062 (1991)). In both the circuit court and this Court, appellate review of an agency action is limited to issues of law, including:

> (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject

---

[1] Although the property is located in Norfolk, Code § 8.01-261(1)(a)(1) provides for preferred venue where the aggrieved party resides.

[2] The circuit court's order contains a scrivener's error, stating that it was affirming the Review Board's August 2, 2018 order when the Review Board's order was entered on October 12, 2018.

matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Code § 2.2-4027.

When reviewing an appeal from an agency decision, "the sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind necessarily would come to a different conclusion." Avalon Assisted Living Facilities, Inc. v. Zager, 39 Va. App. 484, 499-500 (2002) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242 (1988)). "In making this determination, 'the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.'" Id. (quoting Johnston-Willis, 6 Va. App. at 242).

The Gaineses's appeal rests entirely on statutory interpretation, which is a question of law that we review *de novo*. Code § 2.2-4027. However, "[w]e accord great deference to an administrative agency's interpretation of the regulations it is responsible for enforcing." Hilliards v. Jackson, 28 Va. App. 475, 479 (1998); see Johnston-Willis, 6 Va. App. at 243 (noting that the degree of deference we afford to an agency decision depends "upon whether the issue falls within the area of 'experience and specialized competence of the agency'" (quoting Code § 6.14:17 (current version at Code § 2.2-4027))).[3] Accordingly, we will only overturn the

---

[3] Code § 2.2-4027 was amended in 2013 to specifically provide that "[t]he duty of the court with respect to the issues of law shall be to review the agency decision de novo." 2013 Va. Acts ch. 619. The Gaineses do not cite the amendment or argue that the statutory amendment abrogated the deference previously accorded to an agency's interpretations of its own regulations. Thus, they have waived that argument and we assume without deciding that the 2013 change to the statute does not alter this precedent.

agency's interpretation of its own regulations if such interpretation is arbitrary and capricious or conflicts with the statutory scheme. Hilliards, 28 Va. App. at 480. Thus, the Review Board's interpretations of the VMC, which was promulgated through regulations, are entitled to special weight on appeal. See Code § 36-99.6:3 ("The Board shall promulgate regulations . . . establishing standards for heating . . . facilities in new, privately owned residential dwellings."); see also Code § 36-114.

"[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104 (2007). "If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." Id. "The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Commonwealth v. Zamani, 256 Va. 391, 395 (1998).

## B. The Review Board Correctly Interpreted the VMC

The Gaineses assert that the regulations promulgated by the Review Board are both inconsistent with the Code of Virginia and inapplicable to their property. They assert that under a correct review of the statutory and regulatory scheme, they are simply not required to provide heat to their tenants. For the following reasons, we disagree.

The stated purpose of the USBC is to "prescribe building regulations to be complied with in the . . . rehabilitation of buildings and structures, and the equipment therein" and to "prescribe regulations to ensure that such buildings and structures are properly maintained" in order to "protect the health, safety and welfare of the residents of the Commonwealth." Code § 36-99(A). Under the USBC, "equipment" includes heating equipment. Code § 36-97. The USBC is divided into three distinct parts. As relevant here, Part III of the USBC pertains to the

- 5 -

maintenance of existing structures and is commonly referred to as the VMC. 13 VAC 5-63-450(A); 13 VAC 5-63-470(A).

The Review Board is entrusted with adopting and promulgating "building regulations that facilitate the maintenance, rehabilitation, development and reuse of existing buildings at the least possible cost to ensure the protection of the public health, safety and welfare." Code § 36-103. Those regulations apply to the "[s]ubsequent reconstruction, renovation, repair or demolition of such buildings or structures," as well as the equipment contained therein. Id. The General Assembly has made clear that the purpose of the USBC applies with equal force to vacant structures: "there are large numbers of older residential buildings in the Commonwealth, both occupied and vacant, which are in urgent need of rehabilitation and which must be rehabilitated if the State's citizens are to be housed in decent, sound, and sanitary conditions." Code § 36-99.01(A).

Several sections of the VMC are especially pertinent to this appeal. Section 103.1 of the VMC provides, in relevant part, that "[t]his code prescribes regulations for the maintenance of all existing buildings and structures and *associated equipment*, including regulations for unsafe buildings and structures." 13 VAC 5-63-470 (emphasis added). To that end, Section 103.2 states,

> [b]uildings, structures and *systems shall be maintained and kept in good repair* in accordance with the requirements of this code and when applicable in accordance with the USBC under which such building or structure was constructed. No provision of this code shall require alterations to be made to an existing building or structure or to equipment unless conditions are present which meet the definition of an unsafe structure or a structure unfit for human occupancy.

Id. (emphasis added). According to the VMC, a structure "unfit for human occupancy" is,

> [a]n existing structure determined by the code official to be dangerous to the health, safety and welfare of the occupants of the structure or the public because (i) of the degree to which the

structure is in disrepair or *lacks* maintenance, ventilation, illumination, sanitary or *heating facilities or other essential equipment*, or (ii) the required plumbing and sanitary facilities are inoperable.

13 VAC 5-63-510(C) ("VMC § 202") (emphasis added). "Unsafe equipment" includes any "heating equipment . . . that is in such disrepair or condition that such equipment is determined by the code official to be dangerous to the health, safety and welfare of the occupants of a structure or the public." Id. An existing structure, including a vacant structure that is unsecured or open, is considered unsafe if it contains unsafe equipment and is "determined by the code official to be dangerous to the health, safety and welfare of the occupants of the structure or the public." Id.

Here, the City of Norfolk's code enforcement official determined, and the Review Board agreed, that the property was "unsafe or unfit for human habitation for the lack of a functioning heating system." The Gaineses argue that the property could not have been in violation of the VMC because it was vacant at the time of the notice of violation and thus not a threat to any occupants or the public. However, the plain language of the VMC makes it applicable to both vacant and occupied structures.

At the time of the notice of violation, Section 603.1 provided that "[*r*]*equired or provided mechanical equipment*, appliances, fireplaces, solid fuel-burning appliances, cooking appliances, chimneys, vents, and water heating appliances *shall be maintained* in compliance with the code under which the appliances, system, or equipment was installed, *kept in safe working condition, and capable of performing the intended function*." 13 VAC 5-63-540 (2015) (emphasis added). Similarly, Section 605.1 provided that "[e]lectrical equipment, wiring, and appliances shall be maintained in accordance with the applicable building code." 13 VAC 5-63-540 (2015).

Although the VMC "does not generally provide for requiring the retrofitting of any structure[,] . . . conditions may exist in structures constructed prior to the initial edition of the

USBC because of faulty design or equipment that constitute a danger to life or health or a serious hazard." 13 VAC 5-63-490(D). Moreover, under the VMC, the City is permitted to "request the legal counsel of the locality to institute the appropriate legal proceedings to restrain, correct or abate the violation or to require the removal or termination of the use of the building or structure involved." 13 VAC 5-63-485 ("VMC § 105.6").

Upon a review of these provisions, the Review Board concluded that the lack of a heating system in the property violated Sections 603.1 and 605.1 "and that the installation of a heating system is required." The Review Board also found that "the violations cannot be satisfied by the removal of the existing heating system and that a heating system is required to be in place according to the VMC." The Review Board's findings and conclusions are in keeping with the "experience and specialized competence of the agency," and they are in accord with the basic law under which the agency has acted. See Johnston-Willis, 6 Va. App. at 244. The Review Board could fairly conclude that the VMC required the Gaineses to maintain an operable heating facility in their rental property because, without the ability to provide adequate heat to the building's residents, the property meets the definition of "unfit for human occupancy," that Sections 603.1 and 605.1 require electrical equipment be maintained in working condition, and that other provisions of the VMC make clear that the regulations apply to vacant structures. We are, thus, bound by the Review Board's decision. In other words, because the Review Board's findings are not arbitrary and capricious, and because the VMC by its plain wording supports the Review Board's conclusions, we may not disturb its decision on appeal.

Nevertheless, the Gaineses argue that the Review Board's interpretation of Sections 603.1 and 605.1 reduces Section 602 "to a codified ornament," effectively repealing the section. At the time of the notice of violation, Section 602.1 read, "Facilities required. Heating facilities

shall be provided in structures as required by this section." 13 VAC 5-63-540 (2015). Section 602.2 provided,

> Heat supply. Every owner and operator of a Group R-2 apartment building or other residential building who rents, leases, or lets one or more dwelling unit, rooming unit, dormitory, or guestroom on terms, either expressed or implied, to furnish heat to the occupants thereof shall supply heat during the period from October 15 to May 1 to maintain a temperature of not less than 68°F (20°C) in all habitable rooms, bathrooms, and toilet rooms. The code official may also consider modifications as provided in Section 104.5.2 when requested for unusual circumstances or may issue notice approving building owners to convert shared heating and cooling piping HVAC systems 14 calendar days before or after the established dates when extended periods of unusual temperatures merit modifying these dates.

13 VAC 5-63-540 (2015). Essentially, the Gaineses argue that "[b]y requiring the furnishing of specific facilities under Sections 603 and 605, the Review Board achieves a result carefully avoided by Section 602." However, Section 602.2 only requires that landlords of certain dwellings, who have agreed either explicitly or implicitly to provide a heat supply, supply heat from October 15 to May 1 at a minimum of 68°F in the listed rooms. The context of the Section implies that the "heat supply" referenced is a shared heating system in a multi-unit residential building. Section 602.2 does not address the general rules for the presence or absence of a heating system outside of the limited circumstances to which that Section applies. Section 603.1 requires that, once installed, mechanical equipment, including heating systems, be properly maintained. Thus, when Section 602.2 does not apply, the VMC does not permit the complete removal or absence of a heating system. Accordingly, the circuit court did not err in affirming the Review Board's interpretation of Sections 105, 202, 603.1, and 605.1 of the VMC.

C.  The City's Citation of the Property

In their second assignment of error, the Gaineses argue that the circuit court erred in affirming the City's citation of the property leading to the Review Board's decision because the VMC did not require the furnishing of a heating system.

The appellate jurisdiction of this Court in cases such as this is limited to "Any final decision of a circuit court on appeal from . . . a decision of an administrative agency."  Code § 17.1-405.  Thus, ordinarily, this Court only has jurisdiction over a final decision of the circuit court on appeal from a decision of an administrative agency and not over the actions of local authorities.  Code §§ 17.1-405(1), 2.2-4002.  However, the peculiar regulatory scheme laid out in Code §§ 36-97 et seq. effectively creates a partnership between the Review Board and localities for the enforcement of the USBC.  See Code § 36-105 ("Enforcement of the provisions of the Building Code for construction and rehabilitation shall be the responsibility of the local building department.").

Essentially, the USBC contemplates the initiation of enforcement actions regarding the Building Code by officials of local government, the subsequent review of any locality's enforcement decision by the Review Board—a state agency—and any subsequent implementation of the Review Board's decision by the locality.  Thus, because the interests and responsibilities of localities and the Review Board are overlapping and complimentary in the Code, any distinction between a case decision by the Review Board and the initiation and enforcement of that decision by a locality is one without a jurisdictional difference insofar as our authority to review it is concerned.  Given this unique statutory scheme that effectively assimilates the actions of a locality and those of a state administrative agency and provides appellate review through the mechanism of the VAPA, we conclude that we have subject matter jurisdiction to resolve assignments of error relating to the initiation and enforcement of the

- 10 -

decisions of the Review Board by localities. In this case, because we conclude that the Review Board properly interpreted the provisions of the VMC, we likewise hold that the circuit court was correct in concluding that the initial citation of the property and subsequent enforcement of the Review Board's case decision by the City was not error.

## III. CONCLUSION

For the reasons stated above, we affirm the circuit court's judgment with respect to both assignments of error. However, we remand the case to the circuit court for the limited purpose of correcting the scrivener's error in the order, which stated that it was affirming the Review Board's order of August 2, 2018 rather than October 12, 2018.

<u>Affirmed and remanded.</u>